THOMAS GRAY & RICHARD HOWARD vs. HENRY SHAW.

1. It is the duty of trustees to keep within the letter of the authority conferred upon them.

2. A court by equity might grant relief to a mortgagor, or *bona fide* creditor seeking to avail himself of alledged equitus, when it would not sustain a bill to redeem eight years afterwards, by a purchaser for a nominal price.

3. A sale by trustees under an advertisement dated December 7, and stating that the trustees would "on the 28th day of December next" proceed to sell, is valid. The ordinary construction, based upon the usage applicable to such advertisements, and the duty of the trustees to advertise *twenty days* before the sale, cannot mislead bidders, or result in injury.

4. If the power of trustees be to sell the whole, or so much of the trust property, as may be necessary to satisfy the debt secured, they may properly divide it into convenient building lots, and if the proceeds of the sales equal the aggregate value of the property, no exception can be taken.

## APPEAL from St. Louis Circuit Court.

### Crockett & Whittlesey, for appellant.

1. It is the duty of a trustee under a power, to follow strictly the terms of that power, and unless they do this their acts are void. The directions contained in a power must be strictly followed, and the directions contained in a mortgage preclude all departure from them. 4 Kent's Com. 148; Hawkins vs. Kemp, 3 East. R. 410. Directions of a power must be strictly complied with: 4 Kent. C. 330, n. a. Special power of attorney must be strictly construed: Hogg vs. Smith, 1 Taunt R. 356; Fenn vs. Harrison, 3 Taunt 457; 1 Hare & Wal. 382–396; Wyhham vs. Wyhham, 3 Taunt 316; Morgan vs. Suman, 1 Taunt 284. Trustees under a power must pursue their power strictly: Baldridge vs. Walton, 1 Mo. R. 520; Stine vs. Wilterson, 10 Mo. R. 75. Persons claiming under a power must show that it has been strictly pursued: 1 Crim. Dig. 145, n. 84; Nalle vs. Tenurich, 4 Rune. R. 585; Cockerill vs. Chelmley, 10 Barn. & C. 564; S. C.; 33 Con. Ch. 517; Chelmley vs. Paxton, 3 Bing. R. 207; 3 Russell 565; 10 Moore 286; 11 Moore 17.

The burden of proof, that sale was properly made, rests upon the claimant under it; and unless the advertisement of the sale is irregular: Gibson vs. Jones, 5 Lt.                    execution of a power be prescribed by a particular method, that mode must be followed, and it negatives all other modes: 4 Kent's C. 147 n. a.; Joy vs. Gilbert, 2 P. Wm. 13; Miller vs Banks, 3 P. Wm. 1; Isherwood vs. Oldknow, 3 M. & S. 382.

So in the case of titles under tax sales. In all summary proceedings, the complainant must show that all requisites are complied with: Rule's lessee vs. Parker, 9 Cranch R. 365; Williams vs. Peyton's lessee, 4 Wheaton 77; Neal vs. Hughes, 10 Gill, & John. 7; 2 Har. & Gill, 346.

In Anderson vs. Foulk, 2 Har. Gill, if trustee ordered to sell entire, at public sale, under decree of court, the sale will be irregular and void, but the court may notify the sale for good reasons.

Under a power to sell for instalment due, a sale for one due and one not due is void: Ormsby vs. Yanacev, 3 Little 411.

Where advertisement under power states a false assertion, as, that land sold on three mort-

Gray & Howard vs. Shaw.

gages instead of two; the sale will be irregular and void: Burnett vs. Denneston, 5 John Chy. R. 37.

In the case of Buller vs. Dunc., 1 P. Wm. 445, 455, the Lord Chancellor said, that "a declaration of trust was like the prescribing at law to the trustee, which was to be observed by him, and contained in it a prohibition to act to the contrary, it was such an affirmative as raised a negative, &c." The case of Iivy vs Gilbert, 2 P. W. 13, was decided on the same principle, and affirmed by the House of Lords, although thought to be a hard case. 2 Bro. & C. 468; and that too when a mortgagee lost the money he had advanced.

II. These cases, cited to show the strictness with which trustees must pursue their powers, the question rises, have the trustees in this case properly pursued their power? By the terms of the deed they were to sell the whole, or any part of the land; first giving twenty days' notice of the time, terms, and place of the sale, &c.

Now, in this case the trustees have not complied with the terms of the power, in this:

1st. They did not sell on the day advertised. The advertisement was first inserted on the 7th of December, and in it they advertised to sell on the 28th of December, next. The ad verb next, here qualified the word December, and not the word day, and there is an ellipsis of the verb ensuing, or following. By the grammatical construction of the sentence, the property was to be sold on the 28th of December, of the following year, and as the trustees did not sell on that day, but upon another day, they so failed to comply with the power, and the sale was void.

That this construction of the advertisement is correct, see the case of Bort. of Mobile vs. State, Minor's Ala. R., 290; where the court decided, that a notice dated March 6th, and returnable in March next, is returnable in March of the following year.

But admitting, for the sake of argument, merely, this construction to be incorrect, still, it tends to throw a shadow over the title, and to diminish the value of the title sold, and would prevent the purchaser from bidding for fear that the title would not pass As courts of equity always consider any conveyance by mortgagee, to be subject to redemption if venders had not relied on the power. 1 Pow. on Not. 124, Bost. Ed 1828.

2. The trustees failed to pursue their power in this, that they advertised the land for sale as an entirely—as a whole, but on the day of sale cut it up into lots and sold it in parcels.

It is useless to answer, that the land sold for its value, as stated by witness. It is a sufficient reply, non in hoac fœdera venit; Clark made no such contract, gave no such authority to the trustees, to sell, how and as they pleased, and when they pleased. The deed under which the trustees assumed to act, and from which they derived all their authority, expressed the terms upon which the land should be sold; and the manner therein prescribed negatived any other method of sale. They were to sell the land or so much thereof, &c—they advertised the whole, and then sold in lots. Now, the advertisement gave no notice that they would sell it in lots, and non constat, that if they had so done, the land would have brought more than it did, for where there is one man worth $50,000, ready to buy land in large pieces, there are dozens worth $2000, ready to buy small pieces for their own use. Persons of small means, seeing the land advertised as a whole, would not attend the sale, whereas, persons of large means, who bought for speculation, would not bid upon small lots, on account of the uncertainty of making a resale to advantage, and the trouble of attending to the management of property in small lots.

To show the strictness with which courts regard such matters, see the following cases:

If a trustee under the decree be ordered to sell entire at public sale, sell at private sale in parcels, the sale will be irregular and void, although the court may for good reason affirm his acts. Anderson vs. Foulke, 2 Har. & Gill, 346; in Quarles vs. Lacey, 4 Munford Rep., 251; a sale by trustees was held invalid, on the ground that the sale was not in pursuance of the decree, by which as much was ordered to be sold as should pay the debt; which excluded the selling in small quantities, which might have diminished the price obtained therefor. 4 Munford R., 251.

Gray & Howard vs. Shaw.

Where advertisement under a power, states a false assertion, as, that land is to be sold under three mortgages instead of two, the sale will be irregular and void. Burnet vs. Denniston, 5 John. Ch'y R., 37.

Under power to sell for installments due, a sale for one due and one not due, is void. Ormsby vs. Tarvacen, 3 Little (Rev.) R., 411. The general rule of law is, that in all summary proceedings, it must be shown that all the requisites of the law have been complied with, as in cases of sales by tax collectors, public officers, &c. 9 Cranch, 365; 4 Wheat. 77; Neal vs. Hughes, 10 Gill & J., 7.

Although the defendant, purchasing from the trustees, has acquired the legal title, yet the requisites of the deed not being complied with, he has not acquired a complete title in equity. Taylor vs. King, Mun. R , 358, 367. The strictness required, in this summary method of foreclosing for debt, is also seen in the case of Baldridge vs. Walton, 1 Mo. Rep., 520; Stine vs. Wilkinson, 10 Mo. R., 75.

That the land was worth more than it sold for, is seen from the price the equity of redemption sold for at sheriff's sale, with this legal title in the defendant, under the deed of the trustees, and but for the expenses and trouble of a suit to redeem it, would have brought still more.

Upon the principles laid down and established in the books, the trustees have not complied with the terms of the power, for they have sold without advertisement, for the sale on a day not advertised, is a sale without advertisement, and that is void. Gibson vs. Jones, 5 Leigh. Va. R., 370.

The sale is void at equity, for they did not sell in accordance with the terms of their power, in not advertising the manner and terms of sale. They did not state that they would sell in lots, but that they would sell the whole.

In all these respects they have failed to comply with the terms of the power, and the sale is consequently void; and the plaintiffs being the purchasers of the equity of redemption, are entitled to redeem.

SPALDING, for respondents.

I. The sale to the *cestiu que trust*, the creditor secured by the deed of trust, was legal, and is customary, in fact, it is necessary that he should be able to bid, otherwise, there would be a sacrifice. Coote on mortgages, 124, vol. 67, Law Lib.; 18 Vessey 344, 346; Powell on mortgages, 13, notes; 7 J. C. R., 50; 10 Ohio, 204. Even trustee would get legal title, 14 John., 407; 8 Wend., 426.

II. The deed of the trustees to Shaw passed the title whether they advertised rightly or complied with the conditions in the deed of trust or not. A power in a mortgage to sell is good, and a sale has the equity; 6 Miss., 273; 67 L. Lib., 177.

1. The trustees were not mere agents or attorneys in fact, but the holders of the title, and their deed operated to pass out the title. 6 Munford, 358. This reference is directly in point.

2. Lewin on trusts, 242, (22 Law Lib.) The legal estate in the trustee has precisely the same properties and incidents as if the trustee were the usufructuary owner; see also p. 244, 247; 14 John., 407.

III. The notice was sufficient. There is no prescribed form of notice for sale under a deed of trust to secure payment of debts; all that is necessary is to give such notice for the required time, as, that people shall be informed to a reasonable certainty, what is to be sold, and when, and where, &c.

12 Wheat. 570—no legal form of notice required, &c.

7 Ohio, 16—trustee sold land in several parcels, not stating in the advertisements that he would do so—held good.

Gray & Howard vs. Shaw.

4 Port. Rep., 321—the advertisement need not state the amount of the debt.

·13 Mo. R., Hewes vs. Musick, held, that the advertisement, which was confused and bungling, and did not designate how much was due, nor to whom it was due, was sufficient; it was not shown that the notice misled any person, or was misunderstood; but the evidence showed that it was understood, even in the country and neighborhood of the land. 10 Miss. R., 75; Stine vs. Wilkinson. This was a case where the *cestin que trust* had meddled with the advertisement, and where the advertisement was not published as required. The property was sold for a mere trifle; it was worth from $4000 to $5000, and was bid off at public auction at $100. It was held unfair, or in other words, fraudulent.

In the case now before the court there is no fraud nor unfairness. The property sold for its full value, as the record states.

IV. The debtor, Clark, sustained no injury. The property was sold for its full value, at the time and on the length of notice, (daily published) as required in the deed of trust, with the usual publicity given, and usual concourse of persons at the bidding; and there were adverse bids. What equity, then, is there in Clark, or those claiming under him? The facts show that the notice was generally understood to be for the day on which the sale took place; and there was not a particle of proof that a single person understood it differently. Will the court assume that it was understood differently, and therefore, bidders were deterred from competing at the sale?

Is this sale to be set aside because language is ambiguous, and the advertisement lacks mathematical precision, where no injustice—no injury is shown?

To establish a valid title to the relief prayed for, it was necessary to show that the party was injured by the sale, or that there was fraud in it, or a failure to comply with the forms required by the deed of trust, neither of these appears, but the reverse positively shown

1. The property sold at its full value.

2. It was honestly conducted, not a shadow of proof that there was any unfairness or intrusion to get an undue advantage.

3. The advertisement was full, as to the debt, the power to sell, the property to be sold, the place where to be sold, the length of time and mode of publication, and in a paper of general circulation, and was published daily. It is dated December 2nd, and gives notice that the sale will take place "on the 28th day of December next." Now casual readers seeing it, and that the deed of trust required 20 days notice only, never would understand, nor did a single person understand it to mean on the 28th December in the next ensuing year. If any person had so understood it, he would have been produced to testify to the fact.

4. There were opposing bids, so that the property was run up to the full cash value, which shows conclusively, that the supposed ambiguity created no embarrassment in the minds of bidders, and that every body understood the advertisement alike, to-wit: that the sale was for the next 28th of December.

5. No body ever advertised property on such a deed of trust, for sale a year before the day. It would have been so strange and awkward as to induce the belief that it was a mistake.

V. The failure to give notice by advertisement, that the land would be sold *in lots*, does not vitiate.

7 Ohio Rep. 216, 220, (the 7th vol of Ohio Rep. is in two parts, and this case is in the second part—Doe vs. Turner,) is on the point exactly. 10 Ohio R. 207, recognizes the above decision.

9 Mis. Rep. 581, Ott vs. Soulard, at page 605, the court held that a sheriff's sale was good under an advertisement which describes the whole tract, is at the sale, the particular sold is pointed out, &c.; thus applying the principles to judicial sales.

But this fancied defect in the advertisement worked no injury; did not lessen the prices bid, for it sold for its full value at the time. What reason is there to suppose that if the advertisement had been different it would have been sold for more than its value?

If the whole had been sold in the lump, then that would have been complained of as an improper or fraudulent mode with much more reason.

VI. The sale was made in 1842. Nothing had been said about the matter until some spec-ulators got hold of it and purchased it for a trifle. Clark acquiesced, and in this case these men have no other rights than Clark himself. If he was precluded from redeeming, his representatives and assigns are also. Clark is content, and it does not lie in the mouths of any person to complain for him. He thought the property sold well. He is aggrieved; had the right to apply for relief; but he must have applied without unreasonable delay.

VII. Considering this case as that of a *bona fide* attempt to execute a power, and also as an execution of it in such wise as to accomplish its object, without injury to any person, then if there has been any defect in the execution, a court of equity would interfere to cure such defect and mistake; and if so, such equity is a defence in this action. 1 Story on Equity, secs. 169, 170, 171, 172, &c.

There is here no wrong to be redressed; nobody is injured; nobody has a right to complain. The only party who can appeal to the court, if there be an informality here, is the purchaser who has paid his money out, the full cash value of the land, and there is, by mistake, an error or defect in the title. The plaintiff now applies to a court of equity, calling upon it to do what is inequitable; that is, to take from a *bona fide* purchaser for full value, the property purchased, and that, too, for the benefit of parties having no lien or interest at the time of the purchase.

10 Ohio, p. 208,—Court say, in describing a sale under such a power, "that the parties constitute their own court, and their own mode of proceeding."

BIRCH, J., delivered the opinion of the court.

This was a petition under the new practice act, praying permission to redeem a certain lot of land in the city of St. Louis, and the facts were succinctly and substantially as follows :

By their deed, dated September 26, 1838, M. L. Clark conveyed to certain trustees, therein named, for the purpose of securing to Henry Shaw the payment of certain indebtedness, the lot of land described in the petition. The deed gave the trustees power, in case the debt was not paid, to sell the whole or any part of said lot, or block of land, for the purpose of paying the debt, by giving twenty days notice of the time, terms, and place of sale, and property to be sold, by advertisement in some newspaper published in the city. The debt not having been paid, the trustees advertised the lot of land for sale for its payment. The advertisement was dated December 7, and stated that the trustees would "on the 28th day of December next," proceed to sell, &c. On the day of sale the trustees divided the ground into lots suitable for family or building purposes, and sold them all, severally, to Shaw, the defendant, he being the highest and best bidder for each of them, and the sale being made at the usual time of day, before the court house door, which was the usual place, and at which there was about the usual number of bidders, and competition, which produced as great an aggregate price for the lot ($4570) as it was then worth.

The trustees having made to Shaw a deed, he went into possession,

and has since retained it. The property was, however, levied upon six or seven years afterwards, by virtue of an execution against Clark, the original grantee, and sold by the sheriff to Gray for the sum of fifty dollars, and Gray having conveyed one half of it to Howard for the sum of two hundred and fifty dollars, they commenced this suit to be substituted in the place of Clark, with the right to redeem the land by paying to Shaw his purchase money, interest, &c. The question in the case consequently is, did the trustees sufficiently comply with the terms of the power conferred in the deed to bar the equity of redemption thus set up?

No difference of opinion exists between this court and the numerous decisions which have been cited from other courts, as to the duty of trustees to keep within the letter of the authority conferred upon them. It may be admitted, further, that had Clark himself, within a reasonable time after the sale of his property (or equity) by the trustees, brought a proper bill to set it aside, for the reasons alleged in the petition before us, and had supported his application by testimony shewing that he had thereby been materially wronged or injured, a court of equity would doubtless have listened particularly to his prayer and his proofs, and possibly have granted him the relief he sought. Similar considerations would have been due to a bona fide creditor, seeking to avail himself of the alleged equities of his debtor, but neither in morals nor in law does the case before us appear to occupy any such footing or relation.

Here there is not the slightest testimony that any person suffered injury, and the sentence complained of in the advertisement is divested of all ambiguity, by but legitimately bringing to its construction the invariable usage of the country in respect to such publications, for that usage or custom would alone irresistibly suggest and supply the gramatical ellipsis, as it was suggested, and was supplied by those who read the advertisement, and who accordingly attended the sale "on the 28th day of December next, ensuing." No other construction could be given to the advertisement, with reference either to the invariable custom alluded to, of foregoing the trouble and expense of publishing such notices until about the last permissible moment in which it could be done, or the absolute illegality of the notice, if it was intended to advertise a sale of property, not twenty days, but a year and twenty days beforehand!

The construction, then, which the plaintiff here insists may have misled the public, but which he introduces not even one of that public to prove did mislead him, would have to be arrived at no less in repugnance to a custom as familiar, as uniform, and as unvarying as any other

known to the country, than to the clear legal duty of the trustees, as to the time of making such publications. We need scarcely add, that such assumptions or pretences are altogether too strained, improbable and technical, to justify a court in overruling at this day what turned out to be a good bargain for the party who took the risk, and paid his money eight years ago, merely to permit a long subsequent speculator, without equity and without hazard, to come in upon a small adventure, and possess himself of an estate which has appreciated into a probable large fortune, under the care and management of another who had long previously paid and satisfied its owner so full and fair a value that he has never deigned to complain.

As to the manner of selling out the block, we think the trustees acted with proper fairness and discretion, if, indeed, they could have adopted any other method that would not have subjected them to legitimate criticism.

By a fair construction of the terms of their trust, they were to sell the whole of the property, or such a part of it as might be necessary to pay the debt of Shaw. It matters not that under the plan adopted the whole of it did not pay that debt, and that Shaw has never received anything in addition, inasmuch as the testimony is explicit that under the plan as adopted the trustees realized for the property its full aggregate value. Independent even of all testimony upon the subject, the whole system of dividing land into lots, and in that manner selling them out for building purposes, would have predisposed us to commend instead of condemn the action of the trustees. In addition to these considerations, it was in fair and strict accordance with the spirit of their authority, that if ten or twelve lots, out of the fourteen into which they divided the block, would produce money enough to satisfy the debt for which it was deeded, they should stop at that number, as they doubtless would have done.

We but repeat, therefore, the entire approbation with which we regard the action of the commissioners in this respect; and that, therefore, upon the whole case, the judgment of the circuit court should be, as it is, affirmed.