FRANCES S. M. GOODE, Appellant, *v.* JAMES H. COMFORT *et als.*, Respondents.

1. *Mortgages — Uses and Trusts.* — Trustees in deeds of trust with powers of sale to secure debts are considered as the agents of both parties, debtor and creditor, and they must act with the strictest impartiality and integrity; and when it is shown that they have abused their trust, or have combined with one party to the detriment of the other, or when it appears that a substantial injury has resulted from their acts in failing or neglecting to exercise a wise and sound discretion, equity will grant relief.

2. *Mortgages and Deeds of Trust—Trustees' Sale.*—In a sale by trustees under a deed of trust with a power of sale, to secure a debt, the trustees put up property in the city of St. Louis as a whole, and sold the same to the *cestui que trust*, and it appearing that the property would have brought a much higher price had it been sold in lots in accordance with the subdivision of the owner previously made, the court set aside the sale by the trustees and permitted the owner to redeem.

## *Appeal from St. Louis Land Court.*

*F. A. Dick,* for appellant.

I. The trustee is by rule of law agent of both debtor and creditor, and as such has positive duties which he must impartially discharge to each. He must so conduct the sale that the property shall be offered to good advantage—Hill on Trustees, 479, 480, 495; Lewin on Trusts, 367, ch. 19; 18 How. 143; Anderson v. Bumgartner, 27 Mo. 77; Stine v. Wilkson, 10 Mo. 93; Gray v. Shaw, 14 Mo. 341; Rector v. Hart, 8 Mo. 460; Conway v. Nolte, 11 Mo. 76; 2 Am. Law. Reg. (N. S.) 712.

II. The discharge of these duties requires the exercise of a discretion in the conduct of the sale, and the trustee fails to perform his office where he allows the creditor *to disturb* the exercise of such discretion at such a critical time as the commencement of the sale—Hill on Trustees, 479 et seq.; Lewin on Trusts, 367; 18 How. 143; 10 Mo. 93; 27 Mo. 77; 14 Mo. 341.

III. While the creditor is protected by any slight stretch of authority by a trustee done in the exercise of this discretion, yet where the creditor intervenes and disturbs this discretion, and interjects conditions of sale not expressed in the deed, such act of the creditor causes a variance or departure from the terms of the deed, not protected by the range of discretion to be exercised by a trustee, and yet being permitted by the trustee, becomes his act. And where such extraordinary acts tend to injure the debtor, they vitiate the whole proceeding—2 Am. L. Reg. (N. S.) 652, § 8; Lee on Abst. Tit., 6 & 376.

IV. The result of the sale in question, the selling of prop-

erty worth $40,000 for one tenth of its value, is the direct and inevitable effect of the hard terms announced at the sale; and the question under such circumstances is, not whether the terms announced are substantially the same as those named in the deed, but whether there is any variation in the terms. There is no discretionary power in a trustee to announce his sale in words different from those expressed in the deed. To permit such a substitution of language on the ground that the change of terms was immaterial, would be to destroy uniformity in these public sales, and to introduce a rule that would be ever varying—2 Am. L. Reg. 713, § 21; Powell v. Tuttle, 3 Comst. 396. Not only were the terms of sale as expressed in the deed added to, but

V. A new condition, substantial and detrimental to the debtor's interest, was added, namely, that the purchase money should be paid "directly upon the termination of the sale"—Lee on Abstr. Tit., 6 & 376; 58 Law Lib. 22, 217.

VI. This super-added condition of sale is the denial of a right of every purchaser of sufficient opportunity and time to inspect the deed to be made to him; to ascertain that in form and mode of execution it is correct. Thus, the creditor not only in this varied the terms of sale from those expressed in the deed, but added an unlawful feature to the sale—Miller v. Evans, 35 Mo. 45; Hill on Trustees, 281, ch. 4, § 1; id. 296; Daniel's Ch. Pr. 899, 900; Lloyd v. Griffith, 3 Ark. 264; Wilson v. McNeal, 10 Watts, 422.

In Stine v. Wilkson, 10 Mo. 93, it is said, "the trustee is regarded as agent for both debtor and creditor, and should stand indifferent between them, as it may not unfrequently happen that questions of importance will arise, in the discharge of his duties, that will demand his impartial action." 27 Mo. 77, says, "a trustee making a sale is agent for both parties." See also 2 Am. L. Reg. (N. S.) 712, § 20, article on "Sales and Titles under deeds of trust," where this subject is fully examined and the authorities brought together.

These authorities show that the trustee is appointed by

those who have conflicting interests to stand between them; when the necessary time for action comes, to do all acts himself according to his own discretion, not at the dictation of the creditor or debtor; but yet he is so to direct this discretion to the end of so offering the property that it will produce the best price. He could have divided this property into lots of ordinary size for building, and it would have been greatly to the advantage of the debtor, as the evidence shows that it was leased out, and had on it many buildings; and such an exercise of a discretionary power for a good end is commended by former decisions of this court. Gray v. Howard, 14 Mo. 341, where the court say the trustees did not do wrong in dividing a larger lot for sale into building sized lots, such conduct was highly approved by the court. See, also, Greenleaf v. Queen, 1 Pet. 138; 1 How. 321; 5 How. 233; 12 Wheat. 570.

We have been considering the words added by order of the creditor, to give buyers his interpretation of the meaning of "cash"—namely, "gold coin"—and insisting that this change was unauthorized by the deed, as well as hostile to the fairness which should have characterized the sale; but now we come to the entire new condition that was inserted in the terms of sale by order of the creditor—namely, that the purchase money was to be paid "directly upon the termination of the sale." This, of itself, introduced a fact not appearing on the face of the deed, that might well deter men who had money to lay out from putting it to such hazard. More than that, it was the denial of a right which every bidder at a sale is entitled to. Purchasers are entitled to fair terms; and conduct that denies them is injurious to the forced vendor. Hill on Trustees, p. 281, ch. 4, § 1, says: " Where the conveyance by the trustees is made under the direction of the court, it will be referred to the master to settle the form of the instrument; and the certificate of the master, having settled a conveyance under such a reference, may be excepted to by any party who is dissatisfied with it." See also p. 296 as to the formalities and requisites of a con-

veyance by a trustee of the estate vested in him, and of the supervision of a court of equity over ·its form, where many questions are stated which arose upon such title deeds.— Dan. Ch. Pr., tit. Settlement of Deeds, p. 899 ; Lloyd v. Griffith, 264 ; Miller v. Evans, 35 Mo. 45. Markley v. Swartzlander, 8 Watts & Serg. 176, holds that a purchaser is not bound to accept a deed with an erasure. For an example of the many questions that may arise on a deed, requiring deliberate examination to settle, see Withers v. Atkinson, 1 Watts, 250. The payment of the purchase money and delivery of the deed are cotemporaneous acts—1 Hill. Vend. 185.

*Cline & Jamison,* for appellant.

The court below ought to have found for the appellant :

I. Because George W. Goode was insane at the time of the sale.

II. Because the property was sacrificed, being worth $40,-000, and sold for only $4,000.

III. Because the property was sold *en masse*, when it was susceptible of a division, and would have brought more if subdivided and sold accordingly, as it had been leased out in lots, and the tenants had erected brick buildings on the same and desired to purchase.

IV. Because it was announced before the bidding commenced, that the purchase money was to be paid immediately after the sale and before the deeds were executed.

V. Because the creditor meddled with the duties of the trustee, pursued a course calculated to prevent competition, and became the purchaser at a greatly reduced price.

Equity has jurisdiction to control the acts of trustees under deeds of trust to secure the payment of money. A more strict compliance is required where the *cestui que trust* has meddled with the duties of a trustee, and become the purchaser at a greatly reduced price—Stine v. Wilkson, 10 Mo. 75.

Everything done by the parties at a sale under a deed ·of

21—VOL. XXXIX.

trust calculated to prevent competition renders the sale void—Longworth v. Butler, 8 Ills. (3 Gil.) 32.

If the creditor is the purchaser under a deed of trust, and he pursues a course calculated to prevent competition, the sale will be set aside—8 Ills. 32; Quarles v. Lacy, 4 Mumf. 252. A sale of land by a trustee will be set aside if the purchase is grossly inadequate, as where the land was worth $500 and it only sold for $50—Wright v. Wilson, 2 Yerg. 294. It will be in connection with other circumstances—Cavender v. Smith, 1 Iowa, 306; Groff v. Jones, 6 Wend. 522; 1 Sto. Eq. Jur. (5 Adt.) 268, § 246; Osgood v. Franklin, 2 John Ch. 23; 14 Johns. 527.

Sale of land and town lots *en masse*, which are susceptible of division, is illegal, and the sale will be set aside—Day v. Graham, 6 Ills. 435; Woods v. Morrell, 1 John Ch. 501; Wakefield v. Campbell, 20 Me. 393.

Although advertised as an entirety, the trustee may, in the exercise of a wise discretion, sell in parcels—Gray v. Howard, 14 Mo. 341.

*Bakewell & Farish*, for respondents.

The respondents insist that the proof in the cause shows no legal or sufficient ground for the relief prayed;

I. Because the fact that the grantor in the deed of trust was insane, or civilly dead, is no reason to prevent a sale under the same.

II. At the time of sale, 1st February, 1862, it was customary to demand gold and silver in payment of debts; no other money purported to be a legal tender, and the parties interested had a right to demand it.

III. The trustees sold the property in two separate parcels, as it was described in the said deed of trust; and it was not their duty, nor was it incumbent upon them, unless so requested and directed, to subdivide the property, and sell it in small lots. Perhaps, if they had done so without having been so authorized by the grantors in the deed, the sale could and would have been successfully attacked.

IV. Though the property was purchased for $4,000,—as the maker of the notes was insolvent, and amount of encumbrances upon same, with interest, was $16,699, the purchaser, as the holder of the notes, in point of fact paid that amount for the same; and had to pay, in addition, for taxes and other charges on the property, as shown by the account, five or six thousand dollars more.

The sale was honestly and fairly conducted, and in the manner that all sales under deeds of trust have been conducted in St. Louis county for twenty years.

WAGNER, Judge, delivered the opinion of the court.

This was a suit brought to set aside a sale made under a deed of trust, and praying that the appellant might be allowed to redeem the premises so sold. The petition states, the plaintiff, by deed dated June 9, 1855, together with her husband George W. Goode, conveyed unto Comfort and Darby, as trustees, certain premises in the city of St. Louis, consisting of certain lands facing 188 feet on south line of Morgan street, and 144 feet 7 inches on Sixteenth street; also, of another certain piece of land running 188 feet along the north line of Christy avenue, and 144 feet 7 inches along the west line of Sixteenth street; the said deed of trust having been made, as therein stated, for the purpose of securing the payment of a certain promissory note executed by said George W. Goode, bearing even date with said deed of trust, for the sum of ten thousand dollars, payable one year after date to the order of Geo. P. Dorris; and the said deed of trust providing for the sale of said premises, if said note was not paid, at public vendne, allowing the trustees " to sell the whole or any part thereof for cash," giving twenty days' notice of time, terms and place of sale in some newspaper published in St. Louis. That said Dorris duly assigned, by endorsement, said note to Peter Richard Kenrick. That, at the date of the execution and delivery of said deed of trust, the fee simple title in said real estate was vested in the plaintiff; and that the said Geo. W. Goode had

only an estate by the curtesy in said premises. That on February 1, 1862, the said trustees offered the said real estate for sale at public vendue, and at the sale the said Kenrick became the purchaser at the price of $4,000, being $2,000 for each of said pieces of land; and by deed bearing date February 1, 1862, the trustees conveyed to said Kenrick said premises.

The plaintiff further states in her petition, that about January 14, 1863, the said Geo. W. Goode died; that about August 1, 1861, he became insane, and remained in that condition until his death as aforesaid; that at the time of said sale by said trustees the said Geo. W. Goode was insane and civilly dead; the said Kenrick, the holder of the note, directed the said trustees to advertise and sell the said real estate; that at the said sale, as aforesaid, the said defendants, before and at the time the said estate was offered and exposed to sale, notified the bidders and the crowd there present that the purchaser would be required to pay for the same in gold coin immediately upon the same being struck off to him, and before the deed was executed, thereby preventing bidding and competition, and enabling the said Kenrick to purchase the said real estate for a very low price.

That at said sale the defendants offered for sale in a lump the whole lot fronting 188 feet on Morgan street by 144 feet 7 inches deep, and also the whole lot fronting 188 feet on Christy avenue by 144 feet 7 inches deep, thereby preventing competition at said sale; that said real estate would have brought more if it had been sold or offered *for sale* by lots of 25 or 30 feet each; that said real estate was sacrificed at said sale; that said real estate is worth at least $40,000; that said trustees did not give twenty secular or working days' notice by advertisement, as required by said deed of trust; that the said Kenrick has not conveyed the said real estate, but claims to own the same as aforesaid; that said plaintiff is ready and willing to redeem the said deed of trust, and pay to said Kenrick, the holder of the said note, the amount due on the same.

Goode v. Comfort et als.

The plaintiff, in conclusion, asks the conrt to set aside the said sale made by the said trustees; that the 'said sale and the deed made in pursuance thereof be declared null and void and of no effect; and that the plaintiff be allowed to redeem the said premises, and for general relief.

Defendants, in their answer, made a general traverse of plaintiff's allegations, and also say that they gave 20 days' public notice of said sale in the "Missouri Republican"; that such advertisement was published daily in said paper from the 9th of January to 1st of February, 1862, both days inclusive; that in pursuance of the time, terms and place designated, said two pieces of land were separately exposed for sale and separately sold; that at the time of the sale no act of Congress making United States notes a legal tender in payment of debts had been passed; the notes issued by the several banks of this State, except the Exchange Bank, were at a discount, and it was customary and not unusual to demand gold coin at public sales in payment of debts. And defendants admit that at this sale notice was given that the purchase money would be required to be paid in gold coin directly upon the termination of the sale.

Defendants further say, that at the time of the sale aforesaid there was a prior deed of trust then outstanding, given by said Goode and wife to F. A. Dick, trustee of John Hasseltine, dated February 21, 1849, conveying the same property, to secure, among other notes, one for $5,000, which at the time of said sale was due and unpaid; but that afterwards, on the 21st of August, 1862, the said Kenrick, as the owner and holder of said note, and without any consideration further than that he did not wish his own property encumbered, released said deed of trust from Hasseltine's trustee.

The defendants further say, that, on account of said notes and expenses of sale, there was due to said Kenrick on February 11, 1862, the sum of $16,669.39; and further say that there is still due to him, in accordance with the items of an account filed with his said answer, the sum of $24,051.86;

and an averment is then made that the estate of George W. Goode is insolvent.

On the trial, the plaintiff offered in evidence the deed of trust from Goode and wife to Comfort and Darby as trustees, the terms and conditions of which have already been substantially set forth. Plaintiff then offered in evidence a deed of the said premises from the said trustees to Peter R. Kenrick, dated February 5, 1862, and purporting to be in accordance with the terms and provisions of the said original deed of trust, and wherein they allege that at the said vendue they did sell the said real estate " to the highest and best bidder for cash," and that said Kenrick became the purchaser thereof for the sum of $2,000 for each of the said two pieces of land. The deed also recited that the auctioneer " read aloud with a clear and distinct voice the advertisement of said sale, and notified all persons that the holder of said promissory note required and demanded that the amount of said purchase money should be paid in gold directly upon the termination of said sale, that the terms and conditions of said sale might be fully known by everybody." The notice by advertisement is annexed to said last described deed, which in the usual form substantially sets forth the terms, descriptions of property, &c., in the original deed of trust ; and asserting that on Saturday, the first day of February, 1862, the said trustees will between the hours, &c., at the, &c., in the city of St. Louis, " proceed to sell the property above described, and in said deed conveyed, at public auction, to the highest bidder, for cash, to satisfy said note," &c.

The affidavit of the publisher is also annexed, showing the notice to have been inserted in the "Republican" from January 9th to January 31st, inclusive.

John T. Moore being introduced as a witness, testified that he knew Geo. W. Goode ; was his attending physician for fourteen years before his death. On the 1st of February, 1862, and for several months previous to that time, said Goode was insane ; he showed symptoms of insanity for sev-

eral years previous to his death. On cross-examination, he stated that he did not know when he had a guardian appointed; that in February, 1862, he was still out and about professing to exercise superintendence over his own affairs, though he had a good many agents.

John Y. Page testified that he knew the said George W. Goode from 1851 to his death; that he died January 13, 1863; "he was manifestly insane from the latter part of September, 1861, until he died"; that he put him in the insane asylum in St. Louis on the 3d of February, 1862; he was taken east to Philadelphia, and there put in the insane asylum in April, 1862. Mr. Goode was not capable of attending to business for several years previous to his death. Witness married a half-sister of plaintiff. On his cross-examination, witness stated that Mr. Goode attended to his business as far it was attended to. "Mr. Dame, Mr. Goode's agent, went away on the 1st of January, 1862; Mr. Goode was not capable in February, 1862, to do business, and for three months previous to that time;" he could "safely say that no one could have thought him to be a sane man; he died insolvent, but left some personal property. After Mr. Dame left, Mr. Goode had no one he called his agent."

Mr. Darby, one of the trustees, testified that he was present at the sale, and that his impression was that Mr. Leffingwell announced at the sale, by the direction of Mr. Timon, the agent of Bishop Kenrick, that gold would be required, and that the money was to be paid down immediately after the sale; that it was to be paid that day.

Mr. Comfort, the other trustee, testified that he was present at the sale, and that his impression was that Mr. Leffingwell announced at the sale that if the property was not paid for by 2 or 3 o'clock on that day it would be resold; that the sale took place at 12 o'clock.

Mr. Leffingwell, the auctioneer, testified that he was present and auctioneer at the sale under the deed of trust; the announcement was that gold would be required, and if not paid by 2 or 3 o'clock the property would be resold.

There was also evidence introduced by defendants that the notes of all the banks of Missouri except the Exchange Bank were at a discount at the time of the said sale, and that gold and silver were at that time often demanded as the only legal tender.

It was next shown that each of said two pieces of land were sold in a lump; that upon the said premises there were valuable improvements erected by various tenants, who had leases of different portions of the said premises, with the privilege of renewing these when their leases expired; that some of the improvements were of brick, some frame; there were two buildings on Morgan street; there were buildings on both sides of Orange street; there were several buildings on Christy avenue, and that the tenants would have bid and bought if the property had been sold in lots. And there were witnesses who testified that they were well acquainted with the property in question, and said that it would have brought very much more if it had been sold in lots of from 25 to 30 feet front.

It was also shown that the price paid by Kenrick for the property was $4,000.

Mr. Comfort testified that the property was worth $36,-000. The property had four fronts—one on Morgan street, two on Orange street, and one on Christy avenue. It was worth on Morgan street $120 a foot; on Christy avenue, $80 a foot.

George Matlack testified that in February, 1862, the property in question was worth $130 per foot on the Morgan street front, and on Christy avenue $110 per front foot.

James T. Swearingen testified that in February, 1862, it was worth $125 to $130 per front foot on Morgan street and Christy avenue front.

H. W. Leffingwell testified that the property on Morgan street, between Fifteenth and Sixteenth streets, was in February, 1862, worth $125 a front foot, and on Christy avenue was then worth $80 a front foot; the corner on Fifteenth and Morgan streets, say 50 feet, was then worth $150 per

foot, and on Fifteenth and Christy avenue was then worth $100 per foot.

Other witnesses, skilled and acquainted with the value of real estate at that time, value the property at similar rates.

James T. Swearingen was appointed guardian of Mr. Goode in March, 1862, and in May, after the sale, called to see the bishop (that is, Peter R. Kenrick) to ascertain whether the plaintiff could redeem it, as it was her own. The bishop said she could redeem by paying in gold the amount of the two deeds of trust and the expenses, amounting to about $17,300. Arrangements were made to borrow the money by giving a deed of trust on the property, but the bishop afterwards would only consent to the arrangement on condition that the property should be deeded to plaintiff and her children; and as the children were minors and incapable of joining in the deed of trust, the matter was abandoned.

The court rendered judgment for the defendants.

Trustees are considered as the agents of both parties—debtor and creditor—and their action in performing the duties of their trust should be conducted with the strictest impartiality and integrity. They are entrusted with the important function of transferring one man's property to another, and therefore both reason and justice will exact of them the most scrupulous fidelity. Courts of equity have always watched their proceedings with a jealous and scrutinizing eye; and where it is clearly shown that they have abused their trust, or combined with one party to the detriment of the other, relief will be granted. Not that a sale made by them will be set aside on slight and frivolous grounds; but where it appears that substantial injury has resulted from their action, where, in pursuance of their powers, they have failed or neglected to exercise a wise and sound discretion, equity will interfere. It is impossible in the very nature of things to lay down any precise rule applicable alike to all cases which may arise, but every case must be decided on the especial facts and circumstances which surround it and upon which it is founded.

The objection taken that the notice was not published in time seems to have been virtually abandoned in the argument, and we are of the opinion that it was sufficient.

It is strongly insisted that the demanding payment in gold coin, and that it should be paid immediately on the termination, had a tendency to deter bidders, and prevent competition. The sale took place before the passage of the law by Congress making treasury notes a legal tender, and the creditor had a right to demand specie if he saw proper. It was not obligatory on him to take anything else, and this of itself will not furnish a reasonable ground for interference. The deed of trust empowered the trustees to sell for cash, but they had no authority to superadd any terms which a proper construction of the instrument did not reasonably imply. Sales by trustees have been likened to sales by a Master of Chancery, and the rule was always to allow the purchaser a reasonable time—a fair opportunity to examine his deed, or submit it to the inspection of his counsel before he was forced to part with his money. The evidence is somewhat conflicting, some of the witnesses understanding that the purchase money would be required immediately on the termination of the sale—and this is the expression used in the deed—whilst others understood it would be demanded by two or three o'clock. Without it can be shown that this announcement had the actual effect of keeping persons present from bidding, we are inclined to the opinion that it would not furnish sufficient warrant for setting aside the sale and holding it invalid on that account. Had persons been present who desired to bid, and been prevented or deterred in consequence of this course, it would present a different case. Where such a course was pursued by a mortgagee selling under a mortgage which contained a power of sale against the remonstrances of persons who were present for the purpose of bidding, the sale was set aside. The Vice-Chancellor remarking "he required payment of the purchase money and performances within an hour's time after the sale, and also that such payment should be made

in specie, the remonstrances of persons who went to purchase were not attended to by him. All this was evidently done in order to deter persons from buying the property, and the better to enable the defendant to get it at his own price. This is a practice out of the usual course of statute sales; it is oppressive and unjust towards a mortgagor. The court will not countenance such proceedings. It is a course of conduct sufficient to authorize a court of equity to set aside a sale; and it is also enough to allow me to consider the defendant as a mere mortgagee in possession, and the complainant entitled to all the rights and privileges of a mortgagor"—Goldsmith v. Osborne, 1 Edw. Ch. 562.

But the principal question in this case is the conduct of the trustees in setting up the property for sale, each piece as a whole, when it is alleged and shown by the evidence that if it had been divided into smaller lots it would have brought more.

The deed required the trustees to sell the property, or so much thereof as would be sufficient to pay the debt. In the case of Gray v. Shaw, 14 Mo. 341, the trustees, under a deed precisely similar to the one under which the present sale occurred, divided the property and sold it in separate and distinct parcels, and this court approved their action, and commended it as highly judicious and proper. And it is doubted in the opinion whether they could have legally pursued any other policy. Singleton v. Scott, 11 Iowa, 589, was a case where a power was given to a trustee to sell land upon a default being made in the payment of a debt secured, and the grantor did not provide for its sale in parcels. The court declared that in a sale of the entire tract the sale would not be set aside if it was more judicious than a sale in parcels, or if the interest of the debtor was thereby promoted. Nor would the sale of an entire tract in a body, under such circumstances, vitiate the title of a purchaser who was ignorant of what the interests of the beneficiary required.

In that case the deed did not contain the usual condition

to sell the land, or any part thereof, for the payment of the debt, yet the court say it was the duty of the trustee to divide it, notwithstanding, if it was for the interest of the debtor; and if the land was in possession of an innocent vendee so that it could not be reached, the trustee would be personally responsible.

Whether it is for the interest of the debtor that property should be divided before sale, is a question often depending on various considerations and extrinsic facts. One piece of property may sell for more, as a whole, than it would if divided into separate and distinct parcels. Its unity may give it additional value. A quarter section will frequently sell for more entire than if divided and sold by forty-acre tracts.

In all such cases where the power contained in the deed does not imperatively demand a particular mode, the trustee in his discretion must sell in such manner as will be most beneficial to the debtor, and he will be held to a strict accountability in the way and choice of expressing this discretion.

In Brown v. Renssler, 15 Ills. 507, Justice Caton said sales made by trustees being a harsh mode of disposing of the equity of redemption, "should be watched by the courts with a jealous eye, and should not be sustained unless conducted in all fairness and integrity."

In speaking of a mortgagee with a power to sell, (and the same law applies to a trustee,) the late C. J. Shaw, in Howard v. Ames, 3 Metc. 311, said: "In exercising the power he becomes the trustee of the debtor, and is bound to act *bona fide* and adopt all reasonable modes of proceeding in order to render the sale the most beneficial to the debtor." Vice-Chancellor Sir Knight Bruce, in the recent case of Mathie v. Edwards, 2 Coll. 465, uses this language: "A mortgagee having a power of sale cannot, as between him and the mortgagor, exercise it in a manner merely arbitrary, but as between them is bound to exercise some discretion; not to throw away the property, but to act in a prudent and

business-like manner with a view to obtain as large a price as may fairly and reasonably, with due diligence and attention, be under the circumstances obtainable." Was that done in the present case? Did the trustees act in a prudent and business-like manner? Here was property worth $36,000 set up and sold as a whole for $4,000, subject, it is true, to a prior encumbrance of $5,000. Much of the property was under lease; the lessees were anxious to buy and acquire the fee simple, but were precluded because the property was not divided, and they either did not want or were unable to purchase the entire quantity. The witnesses all testify that it would have brought more had it been divided in lots of 25 or 30 feet front on the street. This is the usual size of lots purchased in the city for ordinary building purposes, and the action of the trustees excluded all persons from bidding except the *cestui que trust* and large capitalists.

The debtor was insane, incapable of attending to his affairs; he had no one to look to beside the trustees, and they seem to have been strangely oblivious of his interests.

We cannot say that this sale was conducted with fairness and to the best interests of the debtor, and the judgment will be reversed and the cause remanded. The court below will adjust the equities between the parties. The other judges concur.