Judge v. Booge.

———————————•———————————

JAMES JUDGE, Respondent, v. HARRIS D. BOOGE, Appellant.

1. *Equity — Decree need not embrace facts found.*—Under the present code it is not required that the facts upon which a decree is based shall be specifically found. In equity the case is now preserved in the same manner as in an action at law, by a bill of exceptions.

2. *Trusts and trustees — Sale of land under deed of trust — Re-sale — Advertisement — Postponement.*—Where a purchaser at a trustee's sale refuses to complete the contract, it would be improper for the trustee to re-sell on the

same day. His obvious duty would be to re-advertise and sell upon full notice, when the bidding would be open to competition, and a fair price might be obtained.

But a sale of this character must be distinguished from a regularly adjourned sale. The trustee may regularly adjourn a sale to a different time and place when in his discretion, fairly exercised, it shall seem to him necessary in order to obtain a fair auction price for the property. He should always postpone the sale when necessary to obtain a fair price, and should never permit the creditor to force the sale at an inadequate price.

*Appeal from Sixth District Court.*

*Krum & Decker*, with whom were *M. L. Gray* and *E. A. Lewis*, for appellant.

I. The decree in this case is erroneous because it does not recite or state the facts on which it is founded or which the court below considered as proved. This is error for which a bill of review would lie. A decree in chancery, without finding the facts that warrant it, is erroneous. (1 Root, 273.) A decree in chancery must find the facts directly and positively. (*Id.* 466, 521; 2 Ch. Cas. 161; 2 Mad. Ch. 453; 1 Harrison's Ch. Prec. 108; 10 Yerg. 41.) A decree must be not only *secundum probata*, but also *secundum allegata.* (5 Mason, 113.) A decree must be sustained by the allegations of the parties as well as by the proofs in the cause, and can not be founded on a fact not put in issue by the pleadings. (10 Wheat. 181; Gregory & Huston v. Powers *et al.*, 3 Litt. 339.)

II. If it is assumed that the plaintiff is in a position to ask to have the trustee's sale set aside, he has failed to show in evidence any facts which affect the validity of the sale in question. That the conveyance of the land in question, by the two deeds of trust, to the trustee, with power to sell for the satisfaction of the debt, etc., is valid, can not be denied. Such conveyances were at all times valid by the English common law. (Powell on Mortg. 13; 2 Sto. Eq., § 1009–24; 4 Kent, 146; 4 How. 553.) A sale under a power is equivalent to a foreclosure in chancery. (10 Johns. 185; 2 Cow. 195; 4 Paige, 526.)

*H. C. Lackland*, with whom was *F. F. McDearmon*, for respondent.

35—VOL. XLVII.

I. Connect the inadequacy of consideration with the inter-meddling of 'Booge and Chittenden with the duties of the trustee, with the irregularities of the sale, the two sales on the same day at different times, the false representation of Chittenden to Flournoy, the imprisonment of Judge, and with; the other facts too numerous to mention here, and the case shows one of the grossest frauds ever perpetrated. Wherever the least fraud or unfairness appears, the court will always unhesitatingly give relief. The decisions are without number. (Clarkson v. Creeley, 40 Mo. 114; Barnard v. Duncan, 38 Mo. 170; Powers v. Kueekhoff, 41 Mo. 430–1; Rutherford v. Williams, 42 Mo. 19; McNew v. Booth, 42 Mo. 189, 192; Goode v. Comfort, 39 Mo. 327–8; 1 White & Tud. Eq. Cas. 188–9, 206–7, 218–19; Hill on Trust. 522–3, 526, 772; Thornton v. Irwin, 43 Mo. 153; 42 Mo. 551; 35 Mo. 95; 37 Mo. 204; 39 Mo. 71; id. 313; 7 Mo. 346; 3 Mo. 413; 22 Mo. 333; 20 Mo. 290; 25 Mo. 309; 23 Mo. 13; 36 Mo. 514; 20 Mo. 294; 11 Mo. 74; 10 Mo. 75; Grumley v. Webb, 44 Mo. 444; Dover v. Kennerly, 38 Mo. 469.)

II. Counsel for defendant argued in the District Court that the decree is defective because it does not find the facts. We deny that it is necessary to find the facts. There is no defect in the decree in this respect. Under the practice act of 1849 it was necessary to find the facts in the decree. (Sess. Acts 1849, p. 90, § 2.) The judgment was the legal conclusion of the facts set out in the finding, and hence the finding had to contain all the facts necessary to sustain the judgment, and in law cases the appellate court had no power to find the facts. Hence, under the practice act of 1849, the judgment had always to contain a finding of the facts necessary to sustain it, otherwise it was reversed. But this was found extremely inconvenient in practice. Since the practice act of 1855, it is not necessary to set out the facts in the body of the judgment. (27 Mo. 161, 227, 230.) The only question is, does the judgment fairly determine the rights of the parties? Is the judgment a just conclusion upon the whole record and evidence in the case? The form is nothing, the conclusion is everything. The same practice in this respect

is applicable to both law and equity cases. (State *ex rel.* Allen v. St. Louis Circuit Court, 41 Mo. 574, 579 *et seq.*) What is the use of setting out a long string of findings in an equity case, when the appellate court may find some of the facts differently from the lower court, and yet affirm the judgment for a different reason? But if this is a defect, being a merely formal one, it is no ground for reversal, and can be corrected in this court. (Gen. Stat. 1865, p. 548, § 40, p. 670, § 5, p. 671, §§ 19, 20; Sess. Acts 1867, p. 134.) But we insist that the decree does find all the facts, and that, too, in a very clear and explicit manner. It finds the issues upon the pleadings, which are as much a part of the record as the judgment itself. (Gen. Stat. 1865, ch. 169, §§ 1–4.)

WAGNER, Judge, delivered the opinion of the court.

It is insisted by the counsel for the appellant that the decree in this case is erroneous because it does not recite or state the facts on which it is founded or which the court below considered as proved. But under our present code it is not required that the facts upon which the decree is based should be specifically found. Under the practice act of 1849 it was necessary to find the facts. The judgment was the legal conclusion of the facts set out in the finding, and therefore the finding had to contain all the facts necessary to sustain the judgment. But the law, as enacted in 1855, has changed the rule and made it otherwise. (Kurlbaum v. Roepke, 27 Mo. 161; Martin v. Martin, *id.* 227; Brosius v. McGaugh, *id.* 230.) In equity the case is now preserved in the same manner as in an action at law. All the material evidence must be incorporated in the bill of exceptions, for the case is heard in the appellate court upon the pleadings and the evidence, and the whole case will be passed upon in the court of last resort and decided accordingly. (State *ex rel.* Allen v. St. Louis Circuit Court, 41 Mo. 574.)

It is unnecessary to examine the charge made in the bill as to the combination entered into between Booge, the appellant, and Chittenden and Copelin for the purpose of cheating and defrauding Judge, as the allegation was not sufficiently sustained by the

proofs, and it becomes unimportant in view of the subsequent shape given to the case. That Booge purchased the notes and caused the land to be sold with the express purpose of speculating and gaining an unconscionable advantage over Judge, is too clear and transparent to be doubted for a moment. Judge had made his two promissory notes for $5,000 each, secured by deed of trust on upward of 2,000 acres of very valuable land in St. Charles county. The notes had just matured. They bore no interest, and yet Booge buys them for their full face, and commences proceedings to foreclose the deed of trust at once. His attorney wrote out the advertisement and had it published in a paper without taking time to consult the trustee, and afterward showed it to the trustee and got him to approve and ratify the action taken.

Previous to this time Judge had been arrested by the military authorities of the United States and kept confined in a military prison till long after his property was sold and sacrificed. No effort was made to notify either him or his agent, but he was kept in profound darkness. It is true that Booge had the right to buy the notes, and he had also the right to pursue his remedy and enforce the collection; and if everything was conducted fairly and in pursuance of law, he is entitled to be protected, notwithstanding his motives. For the purpose of deciding this case I shall leave out of view the mass of matter relating to fraud in the transaction, as it may be satisfactorily disposed of without entering into that examination.

When the property was set up for sale it sold in mass without any division, and was struck off to Booge for $4,000, a sum conclusively shown by the evidence not to be one-twelfth part of its actual value. The bidders then separated and dispersed, and when the trustee proceeded to make out the deed he discovered that the provision in the trust deed had been violated in the sale — that the deed required that the land should be sold in parcels. When the attention of Booge and his attorney was directed to this they refused to complete the purchase, and the trustee then, on the same day, without giving any new notice, re-sold the property. This second sale took place within the hours specified

in the advertisement, but no person was present at it except the parties immediately interested. Booge again became the purchaser at the same price; there was no competition in the bidding. Although the price paid was grossly inadequate, yet this consideration, unattended with other circumstances, would not be sufficient of itself to authorize a court to set aside the sale or declare the purchaser a trustee for the grantor in the deed. But it is an element which the courts will rigidly scrutinize in connection with other facts. Sales made by trustees being a harsh mode of disposing of the equity of redemption, should be watched by the courts with a jealous eye, and should not be sustained unless conducted in all fairness and integrity. The trustee, in exercising the power, becomes the trustee of the debtor, and is bound to act *bona fide* and adopt all reasonable modes of proceeding in order to render the sale most beneficial to the debtor. (Goode v. Comfort, 39 Mo. 313.)

That the trustee, in exposing the property to sale a second time, when there was no competition, did not exercise a sound discretion, is apparent. It is doubtful whether he had the power to sell at all under the law; most certainly not under the circumstances of this case.

In the case of Barnard v. Duncan, 38 Mo. 170, Judge Holmes, in writing the opinion of the court, held that where the trustee in a deed of trust with a power of sale at public auction, upon giving notice for a certain number of days, advertises the property and puts it up for sale, and the property is struck off to a bidder, the trustee can not, upon the same day, re-sell the property because the purchaser refuses to complete the contract; that there must be a new publication of notice. The same doctrine is repeated in Dover v. Kennerly, *id*. 469.

Although the facts in the case of Barnard v. Duncan did not require that precise point to be decided, still the mode of proceeding pointed out on a second sale is the only one which can do complete justice and protect the rights of the debtor. Where a re-sale is had upon the same day that the first sale takes place, the time is of course uncertain and depends upon the contingency that the first purchaser will not perfect and execute his contract.

How are bidders to know that the property will again be re-sold, and at what hour the sale will happen? It can not be expected that they will wait for hours at the place for the happening of an uncertain event. Under such circumstances the obvious duty of the trustee would be, in the exercise of a sound discretion and for the protection of the interest of the debtor, to re-advertise and sell upon full notice, when the bidding would be open to competition and a fair price might be obtained.

It is very questionable whether any proclamation was made in this case notifying the bidders that a re-sale would take place in the event that the purchaser did not comply with the terms. Whilst there is some evidence going to show that such proclamation was made, the evidence is equally explicit on the other side that there was no such proclamation.

M. L. Gray, who was interested in the matter as an attorney adverse to Judge, the respondent, was present, and states that he can not say there was any notice given that there would be a re-sale in the event that the purchaser at the first sale did not execute the terms of the agreement. He had an idea that such notice was given because it was the usual custom, but he can not state positively that there was any such notice or proclamation. Judge Krekel, who was also acting as attorney for Chittenden, who was interested in the transaction with Booge, was present at the first sale by special request of his client, and he says that he thinks he would have recollected the fact if any proclamation had been made concerning a second sale; that he had thought over the matter, and had no recollection whatever of any proclamation being made looking to a second sale on that day in any contingency. The conclusion impressed upon my mind is clear, that although there was something said about a re-sale taking place in the event that the purchaser should make default, as deposed by some of the witnesses, yet the proclamation was made in such a manner that it did not impart general information, and, for the purposes of this case, must be considered as no notice at all. A sale of this character must be distinguished from a regularly adjourned sale. The power of a trustee to sell at public auction after a certain public notice of the time and place of sale includes

Judge v. Booge.

the power regularly to adjourn the sale to a different time and place when in his discretion, fairly exercised, it shall seem to him necessary to do so in order to obtain the fair auction price for the property. (Richards v. Holmes, 18 How. 147.) The trustee should always postpone the sale when necessary to obtain a fair price, and should never permit the creditor to force the sale at an inadequate price.

When this second sale took place, there was nobody present except Booge and those acting with him. Under such circumstances it would have been the plain duty of the trustee to have postponed the sale instead of permitting an absent and imprisoned party's property to be sacrificed. But the fact stares us in the face at every step in this proceeding that the trustee had little or nothing to do with it. He was a mere passive instrument, and allowed Booge to manage and dictate everything that was necessary or requisite to subserve or conduce to his sinister purposes and selfish ends. A court of equity can not be prostituted to sustain such a transaction.

But the appellant further contends that the decree can not be sustained by the law. The respondent voluntarily dismissed the suit as to Copelin on the ground that he was an innocent purchaser under Booge, and Chittenden was released by making a compromise with him. Instead of avoiding the sale *in toto*, as might well have been done, the court simply decreed that Booge should pay over the profits, and allowed him for all his expenditures and commissions besides. This was exceedingly favorable to him, and surely if Judge does not complain he should not be dissatisfied. We do not think that Judge obtained all he is entitled to; but as he seems to acquiesce, we have only to affirm the judgment.

Judgment affirmed. The other judges concur.