# DAGGETT HARDWARE COMPANY v. BROWN-LEE et al., Appellants.

### Division Two, February 21, 1905.

1. **DEED OF TRUST: Inequitable Foreclosure: No Fraud.** A foreclosure sale under a deed of trust, made within the hours and upon the notice required by the deed of trust, may result in injustice to such an extent as to make the sale inequitable, although there is no fraud connected with the sale.

2. ———: ———: **Inadequacy of Price.** The rule that mere inadequacy of price, unless so gross as to shock the moral sense, is insufficient to set aside a sale of land under a deed of trust, is to be qualified with the proviso that the sale must be fairly conducted in all respects. Where the price is inadequate but not grossly so, and there are other circumstances rendering it inequitable, it will be set aside.

3. ———: ———: ———: **Other Inequities: Play for Time: Arranging for Payment: Unconscionable Advantage.** The property was by the chancellor found to be worth $1,750, and sold for $200, and there was only one bidder, who testified that it was worth $1,200, and that he had arranged to bid $1,000 for it. The mortgagor was not present at the sale, and testified that he had requested the holder of the note (who was also the trustee, and the executor of the original payee) to postpone the sale, and that he had promised to do so, and that relying on that promise he was absent from the city for the express purpose of obtaining money with which to pay the debt; but the creditor denied this, but said he had had several conversations with the mortgagor on the subject, and promised to postpone the sale, but not to the time the mortgagor states. The mortgagor did not know of the sale until after it was made, and at the trial had paid the entire balance of the debt, which amounted to $1,650, and made tender of the bid and costs to the purchaser. *Held,* that, holding in view that the trustee is the trustee both of the mortgagor and mortgagee and that it was not to the interest of either that the property be sacrificed, and there being only one bidder, the sale should have been postponed, and the trial court did right in setting it aside. *Held,* also, that the case differs in all its essential features from those in which the mortgagor was merely playing for time without any substantial reason for believing he could raise the money.

Appeal from Linn Circuit Court.—*Hon. Jno. P. Butler,* Judge.

AFFIRMED.

*West & Bresnehen* for appellants.

The court found that the property in question was worth $1,750. It was sold at trustee's sale for $200. This was not such gross inadequacy as sustain a decree setting aside the sale. Hammond v. Scott, 12 Mo. 8; Parker v. Railroad, 44 Mo. 415; Judge v. Booge, 47 Mo. 544; Wagner v. Phillips, 51 Mo. 177; Durfee v. Moran, 57 Mo. 117; Phillips v. Stewart, 59 Mo. 491; Harlin v. Nation, 126 Mo. 97; Corrigan v. Schmidt, 126 Mo. 313; Pomeroy's Equity Jurisprudence, secs. 826, 927. The law of this State is that a sale of lands by a trustee will not be set aside for inadequacy of price unless the inadequacy is so gross as to shock the moral sense and to outrage the conscience. When property sells for one-eighth or one-ninth of its value the inadequacy is not so gross as to shock the moral sense. In the case at bar property which the court finds to be worth $1,750 sold for $200. The sale was conspicuously fair. The trustee was a man of the highest character and the sale was not made until he was compelled by direction of the probate court to collect the debt in order to settle the estate of which he was executor. While the court finds that the property was worth $1,750, the evidence shows that one of the Post heirs who attended the sale, with his attorney, for the purpose of protecting his interest in the estate, would not bid on it at all. Its surroundings were bad. It was bordering on "Rascal Flat" and in a ward in which about 400 negroes lived. The evidence as to its value was conflicting. It is apparent that the finding of the court as to its value is too high. The evidence further shows that the plaintiff corporation is composed of two

stockholders.   These are Smither, its president, and
Daggett, its secretary.   Both of these gentlemen live in
Brookfield where the property is located, when it was
advertised and when it was sold.   Both Smithers and
Daggett are shown to be experienced business men.
Several days before the sale, Clements, the purchaser,
had an interview with Daggett about the sale of the
property in question.   Daggett then told Clements that
the property had to be sold; that they could not help
themselves.   Clements told Daggett that if it was to
be a "straight" sale; he wanted to attend the sale and
bid on the property for his boy.   Daggett himself tes-
tified that he knew the property was to be sold, and
that he did not attend the sale, although his place of
business was less than two blocks from the place of
sale.   The plaintiff's own evidence shows that the trus-
tee held up the sale while Rusk went out to hunt Dag-
gett; that the trustee cried the sale for a long time, and
tried to get the bystanders to "help him out."   To set
aside this sale on the ground of inadequacy of price,
under the circumstances disclosed in this record, is to
overrule a long line of cases in this State.

*C. C. Bigger* for respondent.


(1)   Sales of real estate, by the trustee named in
a deed of trust, being a harsh mode of foreclosing the
equity of redemption, will be carefully and jealously
watched by the courts, and when not conducted in per-
fect fairness, such sales will be overthrown and the
debtor permitted to redeem.   As where the trustee or
beneficiary, in the deed of trust, has agreed with the
debtor that the mortgaged premises should not be sold
until after a certain date, and afterwards the land is
sold before the date agreed on, in the absence of the
debtor and without his knowledge; or where the debtor,
by accident, mistake or surprise, is prevented from
paying the debt and redeeming the property before a

sale, or is thereby prevented from attending the sale and protecting his interest and preventing a sacrifice of his property, and the premises are sold at a grossly inadequate price. Cassady v. Wallace, 102 Mo. 575; Clarkson v. Creely, 40 Mo. 114; Sheridan v. Nation, 159 Mo. 27; Rutherford v. Williams, 42 Mo. 18; Holdsworth v. Shannon, 113 Mo. 508; Stoffel v. Schroeder, 62 Mo. 147; Cole County v. Madden, 91 Mo. 585. (2) The trustee, in making the sale of the mortgaged property, was the agent of the mortgagor; he occupied a position of peculiar trust and confidence; in discharging that trust and making the sale, he was bound to inform himself of the value of the property and conduct the sale in perfect fairness and in such manner as to protect the interest of the mortgagor and not sacrifice its property; when he found that the defendant, Clements, was the only bidder, and that at a price which was only a tithe of the value of the property, it was his duty to adjourn the sale and not sacrifice the property of the mortgagor. Authorities, supra; Chesley v. Chesley, 49 Mo. 540; Bank v. Richardson, 156 Mo. 270; Vail v. Jacobs, 62 Mo. 130. (3) The court found that the mortgaged premises, at the time of the sale, were worth $1,750, and this finding of the court is fully supported by the evidence. The defendant, Clements, was the only bidder, and the premises were sold to him for $200, about one-ninth of their value. This was so grossly inadequate that a court of equity will set the sale aside on that ground alone. Vail v. Jacob, supra; Hoffman v. McCracken, 168 Mo. 337; Bank v. Richardson, supra.

GANTT, J.—The plaintiff in this case is a private business corporation organized under the laws of this State, and for a number of years was engaged in the hardware business in Brookfield, Missouri, and for a number of years had been out of business. The entire stock of the company was owned by R. T. Smithers and H. B. Daggett, who were respectively president and

secretary. On June 16, 1894, said corporation owned lots 7, 8, 9, 10, 11 and 12, in block 19 in Helm's addition to the city of Brookfield. On that date it borrowed from one H. B. Post the sum of $1,500, and by its said officers executed and delivered to said Post its promissory note for said money so borrowed, which note was due in two years, with eight per cent interest per annum, and secured the same with a deed of trust, in usual form, on the above-described premises, the defendant Judge Brownlee being named as trustee therein. In the month of August, 1895, said H. B. Post died testate, in Linn county, and Judge Brownlee was appointed and qualified as executor of the last will of said Post, and thereupon took charge of said estate, which included, among other assets, the above-mentioned note. Said note was carried by said executor until in December, 1901, during which time the plaintiff corporation annually paid the interest thereon up to July, 1900. On December 28, 1901, the principal and eighteen months' interest being due, the defendant, Brownlee, having advertised the same, sold said premises under the powers vested in him by the said deed of trust to the defendant, Clements, and on the same day executed and delivered to said Clements a deed therefor. On the eighteenth of January, 1902, the plaintiff brought this suit to set aside said sale and the deed made to Clements, and to redeem said property.

Two grounds for the relief prayed were alleged in the petition: First, that said Brownlee, trustee and holder of said note, agreed with R. T. Smithers, president of plaintiff, that he would not sell said property until after January 1, 1902, nor would he advertise and sell the same without first notifying said Smithers, and that said Brownlee, notwithstanding said agreement, advertised said premises for sale under said deed of trust, and on December 28, 1901, without informing said Smithers, and during his absence and without his

knowledge, sold the same to the defendant Clements. Second, that at said sale said Clements was the only bidder, and said property was sold to him for $200, which was a grossly inadequate price, resulting in the sacrificing of plaintiff's property.

At the trial, R. T. Smithers, president of the plaintiff, was called as a witness and testified that in December, 1901, a short time before the holidays, he had a conversation with the trustee, Brownlee, in which he told him he was about to sell another piece of real estate, and that as soon as he did so he would take up the Post note, and requested said Brownlee to carry, or as he put it, "to swing the Post matter over until after the holidays," by which time he would have the money and be ready to meet it; that Brownlee agreed to do so and further agreed not to make a sale or foreclose the deed of trust without informing said Smithers; that he relied on said agreement and left Brookfield on business connected with the sale of the property from which he was to procure the money to pay the Post note; that during his absence and without his knowledge, Brownlee sold the property to Clements for $200; that he first learned of the sale on his return to Brookfield and something like a week or ten days after the sale; that he had, during his absence, sold some property and was prepared to take up the note; that upon learning of the sale he had Mr. Pratt, an attorney, go to Clements and tender him the $200 which he had paid for the property, and also interest on the money, fees for recording deed, etc., and requested Clements to convey the premises back, but he refused to do so.

The evidence as to the value of the property ranged from $1,000 to $2,400. The court made a finding that it was worth $1,750.

Judge Brownlee for defendant testified that he did not promise Mr. Smithers not to sell the property until after January 1, 1902. "We talked about it two or three

times, but it was two or three months before. I never at any time, *after I had advertised it,* promised to hold it off until January. I told him I would hold it off as long as I could. I was notified to make settlement in November, but got it continued over. I told Smithers to hurry it along, that I had to make settlement. I supposed he knew of the sale; it was regularly advertised. I had waited as long as I could. I do not remember telling him that if the Post heirs wanted some money I would advance them $100 or $200 and carry it over. I do not think I could have had such a conversation and forgotten it.''

Mr. Clements, the purchaser, testified he had spoken to Mr. Daggett on Monday previous to the sale on Saturday and asked him if ''this is a straight sale or for settlement between you and Mr. Smithers.'' He said, ''No it is a straight sale; we can't help ourselves. It must be sold.'' ''I asked him how much there was against the property, and he said about $1,600. I told him I wanted to buy it for my boy, and would probably be there. I think the reasonable value of the property at that time was about $1,200, from $1,000 to $1,200. My bid was the only one made. I bought it for $200. I did not go prepared to bid $1,200. We had settled on $1,000 for it. That was our decision on Christmas day.''

Mr. Daggett testified he remembered the conversation with Mr. Clements. Mr. Smithers had the active management and control of the business of the hardware company always. He attended to all the outside affairs. ''So far as I know I could do nothing because Mr. Smithers was absent on the day of the sale. I knew the sale was to be made, but not the hour.'' The court found as follows:

''On the issue as to whether any agreement existed between Brownlee and Smithers, president of the Daggett Hardware Company, that the property should not be sold until after January 1, 1902, the court

finds the evidence conflicting, and standing alone, insufficient to maintain the burden of proof required of the plaintiff.

"The evidence in relation to the value of the property at the time of the sale ranged from $1,200 to $2,200, but the court finds the reasonable value of the property, at the time of the sale, to have been $1,750, and that it was sold for about one-ninth of its real value.

"The court further finds the balance due on the Post note, together with legal charges of the trustee at this time, to be $1,605.

"The court further finds that the amount paid by Clements for the property, together with interest thereon, and the expense of recording the deed, is $205.40.

"The court further finds that all costs of this suit up to this time is the sum of $————.

"And it appearing to the court that the plaintiff paid into court the sum of $1,605 for the use of Brownlee, as trustee and executor, in full of the balance due on the note aforesaid, and that said sum has been accepted by said Brownlee, and that said plaintiff has paid all costs in this suit up to this time, and has paid over to the clerk of this court the sum of $205.40 for the use of said R. W. Clements, the purchaser at said trustee's sale, the court finds upon due consideration of the whole case, that said sale, in equity and good conscience, ought to be set aside and for naught held.

"It is therefore considered and adjudged by the court that the sale to R. W. Clements of the property aforesaid, on the day aforesaid, and that the deed made to him in pursuance of such sale as so recorded as aforesaid, be set aside, and for naught held, in law or equity; that the deed of trust given to Brownlee so as aforesaid be cancelled, annulled, released, and forever held for naught, in law or equity."

From this decree defendant Clements appeals.

I.   One point only arises upon this record, and that is, did the circuit court err in setting aside the trustee's sale in the circumstances detailed in the foregoing statement?

Perhaps few statements have been oftener reiterated than that mere inadequacy of price without more, unless so gross as to shock the moral sense, is insufficient to set aside a sale of land made under a deed of trust, foreclosure or execution.

But this is quite as often qualified by the proviso that such sale must be fairly conducted in all respects. [Hammond v. Scott, 12 Mo. 8; Judge v. Booge, 47 Mo. 544; Phillips v. Stewart, 59 Mo. 491; Harlin v. Nation, 126 Mo. 97.]

On the other hand, where the price bid is clearly inadequate, but not grossly so, where there are other circumstances rendering it inequitable to let the sale stand, the courts have set the sale aside.   Thus in Vail v. Jacobs, 62 Mo. 130, a case never questioned to our knowledge, the sale was attacked on two grounds: the absence of the trustee when the sale was cried, and the inadequacy of the price.   As to this latter ground this court said: "But even if the evidence warranted us in making the concession that the trustee was actually present at the sale, we could not then consent to an affirmance of the judgment dismissing the plaintiff's petition.   And for these reasons: The property was sacrificed.   The testimony tends very strongly to produce the belief that the house and lots were worth $5,000 to $8,000, and yet they were struck off to Nagus, the assignee of the notes, the only bidder at the sale, for $1,000."   Further on, as to the duty of the trustee, the court said, "He should, if present at the sale, and finding that the property was about to be sold for a little over the tithe of its value, *have postponed the sale, and waited a more auspicious moment.*   It was his 'clear duty' to have done this.   [Johnston v. Eason, 3 Ired. Eq. 336.]   He is placed in a position to act fairly

by all interested, and when he fails in his duty in this regard, the sales he makes will be set aside on timely application.''

In Goode v. Comfort, 39 Mo. 325-6, the doctrine is well stated to be that, ''Trustees are considered the agents of both parties—debtor and creditor—and their action in performing the duties of their trust should be conducted with the strictest impartiality and integrity. They are entrusted with the important function of transferring one man's property to another, and, therefore, reason and justice will exact of them the most scrupulous fidelity. Courts of equity have always watched their proceedings with a jealous and scrutinizing eye. Not that a sale made by them will be set aside on slight grounds; but where it appears that substantial injury has resulted from their action, where, in pursuance of their powers, they have failed or neglected to exercise a wise or sound discretion, equity will interfere.''

Similar views were expressed in Stoffel v. Schroeder, 62 Mo. 147, in which it is said that foreclosures by sale by the trustee are at best a harsh mode of disposing of the equity of redemption and should be watched with a jealous solicitude. These cases sufficiently indicate the general principles involved. They do not mean to cast any suspicion upon a system of foreclosure that has so long obtained, but that a conservative course should be pursued in the examination of the conduct of the trustee in making a sale, keeping in view his obligation as a trustee. It was very aptly said in Goode v. Comfort, 39 Mo. 326: ''It is impossible in the very nature of things to lay down any precise rule applicable alike to all cases which may arise, but every case must be decided on the special facts and circumstances which surround it and upon which it is founded.''

That the sale in this case was made within the hours and upon the notice required by the deed of trust

is not to be disputed and there is no pretense of fraud, but notwithstanding this, injustice may have resulted to such an extent as to make the sale inequitable.

It appears that property which the court found was reasonably worth $1,750 was sold for $200, or about one-ninth of its value. Only one bid was made. The bidder frankly testifies he thinks the property worth $1,200 and that he had arranged to bid $1,000 for it. Now when to this is added the fact that the mortgagor who conducted the business for his company was not present at the sale, but was absent from the city when the sale was made, it becomes exceedingly important to inquire why he was not present to protect his rights. He testifies that he had talked with Judge Brownlee and had requested him to swing the sale over until after January 1, 1902, and that the trustee had promised him to do so, and that relying upon his promise, he was at that time absent from the city for the very purpose of raising the money to pay off the debt secured by the deed of trust. Now it is true Judge Brownlee denies this, and says he has no recollection of such a promise, but he does say he had several conversations with Mr. Smithers about the matter looking to some delay, and admits he was over seventy years of age, and a man of large business, and it is a fair inference that his promise to Smithers would make a much more lasting impression on the latter than on Brownlee. The circuit court did not find that Mr. Smithers was wrong and Judge Brownlee was right in regard to this promise. It simply finds that, standing alone, Mr. Smithers had not produced that preponderance of evidence on this point which the law requires where there is a conflict of evidence, and that, therefore, it must look for additional circumstances. Having done so, and it appearing that property of the value of $1,750 had been sacrificed for $200 and one bid alone and that the plaintiff had in good faith paid the whole balance of $1,650 and tendered the purchaser Mr. Clements, who was the only

bidder, and for only $200, the sale ought to be set aside.

Now when we consider that both the mortgagor and mortgagee were interested in the sale; that the mortgaged property was being sold for one-ninth of its value, it is plain it was not for the interest of either the mortgagor, or the mortgagee, for the trustee to permit the property to be thus sacrificed on one bid alone and he should have adjourned the same. Under all the circumstances, he should have postponed the sale for a reasonable time. A trustee is not a mere automaton. While the evidence was conflicting, we think the evidence was sufficient to show that Mr. Smithers in good faith thought the sale was not to be made until after January, 1902, and was relying on this understanding, and agreement of Judge Brownlee to wait that long.

The case differs in all its essential features from that class of cases in which it appears that the mortgagor was merely playing for time without any substantial reason for believing he could raise the money, as was the case of Dunn v. McCoy, 150 Mo. 564, but it does fall within the principle of those cases where there was an honest mistake as to when the sale was to be made. In many of its features it is much like that of Orr v. McKee, 134 Mo. 78, in which the circuit court found there was a conflict of evidence as to the time when the sale was to be made and that the failure to attend the sale could only be accounted for on the theory that the interested party had made a mistake. When it is considered that the plaintiff acted promptly, with no laches, and not only tendered the purchase-money and cost of executing the deeds, but actually paid all of the money due on the debt besides, it seems to us his conduct can only be explained on the assumption that he honestly believed he had an agreement with Judge Brownlee for a postponement till after January 1, 1902. The circuit court took this view and thought

that the obvious inadequacy of the bid, together with the testimony of Mr. Smithers as to his understanding with Judge Brownlee, was sufficient to give him a standing in equity. By so doing no one was injured. The debt was paid in full; the property was saved from sacrifice, and the bidder lost nothing except an unconscionable advantage. We think the decree of the circuit court was equitable and should be affirmed, and it is so ordered.

All concur.