Carter et al. v. Abshire et al.

———◆———

MARGARET CARTER *et al.*, Plaintiffs in Error, *v.* JOHN A. ABSHIRE *et al.*, Defendants in Error.

1. *Deed of trust — Sale, notice of — "Public place," what is.* — The setting up of notice of sale on the sides of a public square in a town or city satisfies the requirement contained in a deed of trust that the notice should be put up in a "public place" in such town or city.

The recitals by the trustee in his deed, that he put up the notices in "public places," are sufficient *prima facie* evidence of that fact.

2. *Deed of trust, sale under — When land should be sold in lump, when in parcels.* — When property for sale under a deed of trust will bring more by being sold in separate subdivisions, it is the duty of the trustee to pursue that course, whether the deed contains a direction to that effect or not. But he must sell it in the lump or in parcels, according as will be most beneficial for the debtor; and he will be held to a strict accountability for the exercise of the discretion devolved upon him.

3. *Fraud — Sale of land — Mere inadequacy of consideration not sufficient to charge fraud.* — Mere inadequacy of consideration in the sale of property, of itself, unless so gross as to furnish a reasonable presumption of fraud, would be no ground for the interference of equity.

### *Error to Fifth District Court.*

*J. F. Asper*, for plaintiff in error, among various points urged, contended that the trustee did not strictly pursue his authority in the matter of notice. Putting up notices on four sides of the square was not putting them up in four public places in the city of Chillicothe. The court-house was more public, and it was usual to put notices on the door. People from all parts of the country visited there. The post-office, where all the people of the town went, and the railroad station, all would have been more public, and would have better served to bring the sale home to more people. (Denning v. Smith, 31 Johns. Ch. 332; Stein v. Wilkinson, 10 Mo. 75; Gray v. Howard, 14 Mo. 341; 1 Washb. Real Estate, 526–8; Powers v. Kueckhoff, 41 Mo. 425; 1 Sugd. Vend. 63.)

The consideration paid for the farm was totally inadequate. The case comes within the rule of Goode v. Comfort, 39 Mo. 313.

*McFerran & Collier*, for defendant in error.

I. The sale by Collier as trustee is not affected by the fact that the land was sold in a body, instead of the smaller legal subdivisions, in the absence of proof showing that it would have brought a higher price had it been sold in forty-acre tracts. (8 Mo. 460; 30 N. Y. 173.)

II. The title conveyed to Abshire by the trustee's deed is unaffected by fraud, negligence or injury to the plaintiff, and the plaintiff's petition is destitute of equity, considered in the light of the evidence in the cause. (2 U. S. Dig. 635, § 564; 4 Johns. 527.)

III. As to sustaining demurrer and motion to strike out, plaintiffs waived the same by pleading error. (Weldon's Adm'r v. Hobbs, 42 Mo. 537.)

IV. As to misjoinder in praying to set aside title for rents and profits and for possession, see 41 Mo. 257; 43 Mo. 139; *id.* 179.

WAGNER, Judge, delivered the opinion of the court.

A point is raised in reference to the action of the Circuit Court in its rulings with respect to the pleadings, but we see nothing in that regard requiring revision.

As the pleadings stood when the trial was had, the plaintiffs were enabled to go into, and did go into, their whole case. All the evidence they had was introduced and submitted, and, had it been deemed sufficient, would have entitled them, under the issues made, to appropriate relief.

The suit was in the nature of a bill in equity, seeking to redeem certain real estate situate in Livingston county, and to set aside a sale made by a trustee. From the record it is shown that L. R. Carter, on the 10th day of September, 1861, made and delivered to L. T. Collier, as trustee, a deed of trust on 240 acres of land, to secure to the Bank of the State of Missouri

the sum of. $1,356.32, payable six months after date, with eight per cent. interest, and dated on the 13th day of September, 1861. Default having been made in the payment of the debt and interest, Collier, the trustee, at the request of the bank, advertised and sold the premises on the 22d day of February, 1864. At the sale Abshire became the purchaser of the land, paying therefor the sum of $1,600, and afterward, in April, 1866, he sold the same to Philip Swank for $5,000. . Swank entered into possession, and has occupied the same ever since. Carter, the grantor in the deed of trust, died before the sale by the trustee took place, and this proceeding is instituted by his widow and legal representatives.

The grounds mainly relied on to invalidate the sale are, that the trustee did not give the requisite notice; that he sold the land in gross when he should have divided it and sold it in forty-acre lots; and inadequacy of consideration.

The deed of trust provided that the trustee, if he proceeded to sell, should give notice by setting up four written handbills in four public places in the city of Chillicothe. The trustee, in compliance with this provision, set up four written handbills on the four sides of the public square in Chillicothe. It is now contended in argument that there are places more public than the sides of the public square, and that would better impart notice. But no evidence was introduced of this fact, and the court cannot be expected to take judicial notice of it. It is not denied that the four sides of the public square are public places, and if so, the requirement in the deed is satisfied. The trustee in his deed recites that he put up the notices in public places, and, by the terms of the trust deed to him, his recitals are *prima facie* evidence of everything contained therein. · Till they are rebutted or overcome by countervailing evidence, full faith and credit must be attached to them.

The next question is whether the action of the trustee in selling the land altogether, instead of separating and exposing it in subdivisions, is sufficient to render the sale void. A trustee, in exercising his duties and powers under a trust deed, is a trustee for the debtor, and is bound to act in good faith and adopt all

reasonable modes of proceeding in order to render the sale the most beneficial to the debtor. Therefore, where property will bring more by being separated when sold, it is the duty of the trustee to pursue that course, whether the deed contains a direction to that effect or not. (Gray v. Shaw, 14 Mo. 341 ; Goode v. Comfort *et al.*, 39 Mo. 313.)

But no general rule can be laid down for the government of trustees on this subject. In some cases the sale of an entire tract will be more judicious and better subserve the interest of the debtor than a division in parcels. A farm or a piece of real estate may derive additional value from its unity or entirety. In all such cases the trustee must act in a manner most beneficial to the debtor, and he will be held to a strict accountability for the exercise of the discretion devolved upon him.

In the present case there is nothing to show that the trustee was guilty of any abuse, or that he used his discretion unwisely or unsoundly. The evidence that the property in mass sold for as much or more than it would have brought had it been divided, is very strong, and I think greatly preponderates. As there was no direction or provision in the deed directing absolutely that the land should be sold by subdivisions, I am of the opinion that the power was well executed, and that the trustee did the best that he could under the circumstances.

There is nothing to justify the interference of a court on the ground of inadequacy. Mere inadequacy of itself, unless so gross as to furnish a reasonable presumption of fraud, would be no ground for interference.

The sale was made when a general depression prevailed in the value of property. But the evidence goes to show that it brought about its marketable price at the time. It rose greatly afterward, but that fact cannot be taken into consideration to affect the validity of the sale. The debt was long past due, and the bank had the right to coerce its payment. The time selected was unfortunate for the debtor, but it does not appear that any improper practices were indulged in, either by the creditor, the trustee, or the purchaser. Whilst these sales should be watched with all strictness, yet titles acquired under them should not be unnecessarily disturbed or ruthlessly invaded.

It has been further argued that the Carters were lulled into security and deceived by the bank promising to give further time before it enforced the collection of the debt. It seems that after the death of Carter the family, with the exception of one son, moved to Pennsylvania, where they had an estate. That son requested the officers of the bank, long after the debt was due, to wait for the money till it could be procured from Pennsylvania, and they told him that they would wait six months. They did wait that length of time and more, and then proceeded to take measures to collect their debt. The promise was a mere gratuity, but it was fulfilled and observed. The plaintiffs were neither deceived nor misled. They were apprized of the sale, and their neglect contributed to the loss if any. The lower courts found for the defendants, and I think their judgments should be affirmed.

Affirmed. Judge Bliss concurs. Judge Currier absent.