BRAINARD M. MILLION, Appellant, *v.* WILLIAM G. MCREE ET AL., Respondents.

*November 9, 1880.*

1. Inadequacy of price is not a ground for setting aside a conveyance made by a trustee under a deed of trust, unless so gross as to warrant a presumption of fraud.

2. The facts in this case disclose no improper conduct on the part of the trustee which warrants the court in setting aside the conveyance.

APPEAL from the St. Louis Circuit Court, ADAMS, J.
*Affirmed.*

MARTIN & LACKLAND, and ANDREW J. KENNEDY, for the appellant: The trustee has the right to adjourn the sale in order to prevent a sacrifice of the property to be sold. — *Judge* v. *Beggs*, 47 Mo. 545 ; *Graham* v. *King*, 50 Mo. 22 ; *Richards* v. *Holmes*, 18 How. 143 ; *Johnson* v. *King*, 3 Ired. Eq. 336. A sale by a trustee will be set aside when the price is grossly inadequate. — *Vail* v. *Jacobs*, 62 Mo. 130 ; *Wright* v. *Wilson*, 2 Yerg. 294. When a trustee sells property in gross which is susceptible of division, and injurious results attend such sale, and the interests of the debtor are sacrificed thereby, the sale will be set aside. — *Chesley* v. *Chesley*, 54 Mo. 347 ; *Kelley*

v. *Hunt*, 61 Mo. 463; *Goode* v. *Comfort*, 39 Mo. 314; *Tatum* v. *Holliday*, 59 Mo. 422. A bare compliance with the condtions imposed by the terms of the power is not sufficient, and the sale will be set aside if not conducted with the utmost fairness. — 15 Ill. 507; 14 Allen, 396; 3 Metc. 311; 106 Mass. 516.

CREWS, FLOURNOY & STEPHENS, for the respondents, cited: *Taylor* v. *Elliott*, 32 Mo. 172; *Goode* v. *Comfort*, 39 Mo. 325; *Powers* v. *Knuckoff*, 41 Mo. 430; *Carter* v. *Abshire*, 48 Mo. 300; 51 Mo. 452; 52 Mo. 444.

HAYDEN, J., delivered the opinion of the court.

This is an action in the nature of a bill in equity to set aside a sale of improved real estate situated in the city of St. Louis, on the grounds, as alleged, of fraud, and misconduct in various particulars on the part of the trustee in the deed of trust under which the sale was made. The allegations of conspiracy and collusion between Fleming, the trustee, and the other defendants, and of fraud on the part of the trustee, are not borne out by the testimony in the case, and in this opinion only the substantial facts as developed at the trial need be considered. The plaintiff and his wife had made, in March, 1874, a deed of trust to Andrew J. Fleming, as trustee, to secure to Margaret M. Fleming, the wife of the trustee, the payment of $10,000 and interest, and subsequently another deed of trust to secure to her the payment of $5,000 and interest, both of which deeds were outstanding upon the property at the time of the sale. The plaintiff also neglected to pay taxes, which by the terms of the deeds he was to pay upon the property thus conveyed as security for the notes. This property consisted of a tract of land on the corner of Fourth and Almond Streets, in the city of St. Louis, having a front of one hundred and twenty-seven feet and six inches on Fourth Street; and upon the land were five buildings fronting upon Fourth Street, and another building in the rear. The

plaintiff failing to pay the principal notes, which became due in March, 1877, and also outstanding taxes, Fleming, the trustee, was requested by his wife, who, according to the evidence, owned the notes as her seperate property, to sell the real estate for payment of the indebtedness. Accordingly, Fleming advertised the property under the first deed of trust, the fourth day of April, 1879, being fixed as the day of sale. There is a dispute as to what happened at the interview between Fleming and the plaintiff which occurred on March 26, 1879, when Fleming called on the plaintiff at the latter's office, especially upon the question whether Fleming, who lived out of the city and was to come to town on the morning of April 4th, to make the sale, agreed to call on that morning at the plaintiff's office and accompany the latter to the court-house, where the sale was to be made. Fleming on that morning did not call at the plaintiff's office, but proceeded to the east front door of the court-house, and there made the sale shortly after twelve o'clock, and at or about the usual hour for such sales. The plaintiff was not present. At the request of Fleming, Mr. Conn, who was the business partner in the real-estate business of the defendant McRee, cried off the property. Conn read the advertisement and announced the terms of sale as cash, and that $500 would be required to be paid down on the bidding off of the property, and the remainder before two o'clock, otherwise the property would be sold again. The property was cried in the usual way. The sale was made of the property as an entirety, nothing being said as to any division or selling in parcels. But few persons were present, and only one bid was made. This bid was made by the defendant McRee, as agent for Mrs. Fleming, and the property was knocked off to him. Subsequently Fleming, the trustee, made a deed of the property to McRee, who then conveyed the property to Fleming, as trustee of his wife. No money passed in the transaction. With the facts thus in outline before us, we may proceed to consider those

which are disputed, at greater length, in connection with the points which are raised by the plaintiff. The court below dismissed the bill.

Though no fraud, and nothing in the nature of a conspiracy between any of the defendants, is shown in this case, it is contended that it does appear from the facts that the trustee failed to exercise that impartiality which the law requires, and violated his duty in many particulars, to the detriment of the debtor, whose rights he was bound as carefully to observe as those of the creditor, in discharging the trust. It is contended that the trustee was charged with the knowledge that there was one present at the sale who was authorized to bid $15,000 for the property, and that thus he violated his duty in permitting the auctioneer to sell the property for a third of that sum. But this argument proceeds upon an erroneous view of the evidence. The agent of Mrs. Fleming had no authority to bid $15,000 for the property. That sum was merely named by her as a limit beyond which her agent was not to go, in case of adverse bidders, and the fact that the trustee and the auctioneer were aware of this did not demand any action upon their part. As no adverse bidder appeared, the contingency for which the beneficiary had, as a matter of prudence, provided, wholly failed to arise.

The published advertisement of the sale, it is contended, prescribed a later hour than two o'clock as the limit of time for the sale, and therefore was inconsistent with the announcement that the successful bidder should have only till two o'clock to pay the balance of the purchase-money. This objection must be considered as without force, as must also the objection that so large a sum as $500 was required as a cash payment. Such objections could only furnish ground for interference in case it was shown they had any tendency to deter bidders at the sale. The sum demanded as a cash payment was not exorbitant, and the time afforded for the payment of the balance was not unreasonable. There is

nothing to show that in these particulars the trustee went out of the usual path, or was influenced by any improper motive.

We cannot think that the objection made that it was the duty of the trustee on the morning of the sale to have sought the plaintiff, and not to have sold the property without the latter being present, is any better founded than those which have been urged. We do not consider it established by the evidence that there was any promise or undertaking on the trustee's part to call for the plaintiff on the morning of the sale. Certainly there is nothing that shows an intent to secure the absence of the plaintiff from the place of sale. A very little care and attention on the plaintiff's part would have enabled him to be present. He knew the usual hour of sales, and that the property was to be sold on that day. The obvious precaution of sending a messenger to the door of the court-house would apparently have secured the delay of the sale until the plaintiff could have been present. It is difficult to see how his absence can be regarded as other than a matter of choice on his own part, or of indifference.

The conduct of the trustee in not offering to sell the real estate in parcels is an objection of more moment. The deeds of trust describe the land as one parcel, and authorize a sale of the property, " or any part thereof." There were, as has been stated, houses upon the land, and division might have been made accordingly. On the other hand, though the houses produced rent, and thus gave a certain value to the improvements, the testimony shows that these improvements were old, and not of great value. The property had a value for commercial purposes which was little, if any, enhanced by the buildings ; and it seems that if any division had been made at the sale, the trustee should have disregarded the improvements, and have sold, not according to them, since their dimensions were irregular, but according to a frontage on Fourth Street, which would have divided

the tract into regular lots.    Still, the buildings were there, and created an embarrassment in the division, since the solution of the question would depend on the purpose for which the purchaser intended to use the land.    Under these circumstances we do not see that the trustee could well have sold in parcels, in the absence of some indication on the part of intending bidders of a desire as to how the division should be made.    If the sale had been made in lots fronting, say, twenty-five feet upon Fourth Street, such sale would have been in disregard of the buildings.    If, on the other hand, the division had been made in reference to the buildings, the land must have been disposed of in lots of unequal size, and with reference to what gave but little additional value to the ground.    Thus, in spite of the tract and its value, it does not appear that, under the circumstances of the case, the action of the trustee in selling the property in a mass was unwise or indiscreet, if we test his conduct by the rules declared applicable by the Supreme Court to such sales.    See *Goode* v. *Comfort*, 39 Mo. 327 ; *Carter* v. *Abshire*, 48 Mo. 300 ; *Bales* v. *Perry*, 51 Mo. 452 ; *Benkendorf* v. *Vincenz*, 52 Mo. 441.

It is clear that the amount bid for the property was inadequate.    It is true that in considering the question of inadequacy of price, too little regard is ordinarily given to the actual value of the property in question as it stands.    Speculative values, or at least those based upon possibilities, — as, upon the rental value of the property when properly improved, — are too often exclusively considered.    But the very conditions of sales under deeds of trust imply actual values, and often necessitate sacrifices of certain elements which add largely to the worth of real estate if advantageously disposed of.    At sales so made the full value can seldom be realized, yet the highest values are proposed as the test by the party seeking to set aside the sale for inadequacy.    Thus, in the present case, the plaintiff's witnesses place the value at from $25,000 to $30,000 ; but regard must be here paid

to the amount of income the property was bringing, and also to the fact that with ample opportunities the plaintiff failed to find a purchaser at a figure much lower than the lowest now named by his witnesses. But, making due allowance for these facts, it is apparent that the sum bid was very inadequate, the value of the property being certainly, after making all allowances, from $15,000 to $18,000, while the sum for which it was bid off was $5,000. If inadequacy of consideration is in itself a sufficient ground for setting aside a sale, this sale should certainly be set aside. But there is nothing here which indicates imposition or oppression; nothing which might not occur in any case of a sale under a deed of trust. A new rule must be laid down if, on the ground of such inadequacy as here exists, sales are to be set aside when regularly made.

In *Carter* v. *Abshire*, 48 Mo. 303, the Supreme Court of this State adhered to the doctrine, which we consider to be well established, that mere inadequacy, unless so gross as to furnish a reasonable presumption of fraud, is no ground for interference. We do not understand that the Supreme Court of this State, in *Vail* v. *Jacobs*, 62 Mo. 130, notwithstanding the strong language there used, intended to overturn the established rule. In view of the facts in the case at bar, it cannot fairly be said that any presumption of fraud arises. It is also to be borne in mind that the case presented is one, not where the debtor seeks to redeem the property, but merely to set aside the sale.

The question of the counter-claim of the defendants A. J. and Margaret M. Fleming does not arise here. The bill was dismissed below, and also the counter-claim, and from the decree no appeal was taken on the part of any of the defendants.

The judgment is affirmed. All the judges concur.