Dunn, Appellant, v. McCoy.

Division One, June 14, 1899.

1. **Practice**: EJECTMENT:- EQUITABLE DEFENSE. Where the purchaser at the foreclosure sale of a deed of trust brings suit in ejectment against the mortgagor, and the answer sets up an equitable defense and prays the privilege to redeem, the case is converted by the answer into an equitable proceeding.

2. **Deed of Trust**: FORECLOSURE: REDEMPTION: FAILURE TO RAISE MONEY. A failure to raise money to pay the debt or interest due, before the day of the sale, where the mortgagor has ample notice of the beneficiary's intention to foreclose unless payment is made, and exercises no diligence, will not justify a setting aside of a sale made by the trustee.

3. ———: ———: ———: POSTPONEMENT. Where there is no evidence that the mortgagor would have secured the money with which to meet the debt or interest if the trustee had complied with his request to postpone the sale for two days, or that such postponement would have done him any good, or that the property would have brought a better price, the sale cannot be set aside because his request for postponement was denied.

4. ———: ———: SELLING IN BULK. Where there was an agreement by the parties to the deed of trust, inserted in the instrument, that the property should be sold in lump, and it was so sold, and a third party becomes the purchaser and transfers by deed to the defendant, the sale can not be set aside and the mortgagor permitted to redeem on the ground that the mortgagor's misfortune and the stringency of financial matters forced him to agree to such a condition.

*Appeal from Harrison Circuit Court.*—Hon. P. C. Stepp, Judge.

REVERSED AND REMANDED (*with directions*).

D. J. & W. L. HEASTON and CROSBY JOHNSON for appellant.

(1) The right to contract is a vested right, and where the parties are competent, and the contract and subject-matter legal at the time the contract is made, it is beyond the

power of the State to annul it, or deprive the parties to it of its fruits. State v. Loomis, 115 Mo. 307; State v. Julow, 129 Mo. 163; State ex rel. v. Laclede Gaslight Co., 102 Mo. 472; Arnold v. Willis, 128 Mo. 145; Scotland Co. v. Railroad, 65 Mo. 123; Cooley on Const. Lim., sec. 362; Towle v. Railroad, 47 Am. Dec. 153; Strong v. Clem, 74 Am. Dec. 200; Bishop on Contracts, sec. 567. (2) If the State, itself, can not destroy a vested right on the part of a person competent to contract, it is beyond the power of its courts to do so, except for fraud, mistake, etc. Mo. Hist. Soc. v. Academy, 94 Mo. 459; Ames v. Scudder, 83 Mo. 189; s. c., 11 Mo. App. 168; Jordan v. Beal, 51 Ga. 602. (3) If the contract is not illegal, and the parties were competent, and there was no fraud, mistake or duress, the courts must enforce the contract, and can not set it aside because they would deem it unwise or unreasonable. Blaine v. Knapp Co., 140 Mo. 241; Story v. Conger, 36 N. Y. 673; Fruin v. Railroad, 89 Mo. 397. (4) A court of equity has no power to make a contract for parties different from that they have made for themselves. Smith v. Jordan, 97 Am. Dec. 232; Lipscomb v. Ins. Co., 138 Mo. 17; Blaine v. Knapp Co., 140 Mo. 241; Norton v. Bohart, 105 Mo. 615; Adams v. Schnader, 155 Pa. St. 394; Sachleben v. Wolfe, 61 Mo. App. 36; Hempler v. Schneider, 17 Mo. 258; Wirt v. Schumm, 67 Mo. App. 173. (5) The power of sale conferred on a trustee by a deed of trust must be followed strictly, literally and precisely in all its details. Harkness v. Scammon, 48 Mo. App. 136; Perry on Trusts, sec. 602; Pomeroy's Equity, sec. 1062; Wolf v. Ward, 104 Mo. 128; Gray v. Shaw, 14 Mo. 341; Schanewark v. Hobrecht, 117 Mo. 22; Stewart v. Brown, 112 Mo. 171; Lewis v. Whitten, 112 Mo. 318. (6) The fact that land, conveyed by a deed of trust, is sold in gross is not *per se* sufficient ground to avoid the sale; much less could it be so, if the deed of trust provides that the trustee shall sell it that way. Hardwick v. Hamilton, 121 Mo. 565; Gray v. Shaw, 14 Mo. 341; Goode v. Comfort, 39 Mo. 313; Benkendorf v. Vincent,

52 Mo. 44; Million v. McKee, 9 Mo. App. 344; Hogan v. Hudson, 67 N. W. 1081. A statutory provision that a sheriff may sell by parcels is merely directory. Sheehan v. Stackhouse, 10 Mo. App. 469; Clark v. Stilson, 36 Mich. 482. As the deed of trust prescribed the sale should be in gross the trustee could sell in no other way, without making the foreclosure irregular. Hunt v. Townsend, 31 Md. 336; Perry on Trusts, secs. 602, 783 and 785. (7) Mere inadequacy of price, unaccompanied by fraud or unfair dealing is not a sufficient ground for setting aside a sale under a deed of trust. Orr v. McKee, 134 Mo. 78; Harlan v. Nation, 126 Mo. 97; Malone v. Webb, 112 Mo. 575; Lipscomb v. Ins. Co., 138 Mo. 17; Phillips v. Stewart, 59 Mo. 491; Hardware Co. v. Building Co., 132 Mo. 454; Walter v. Herman, 99 Mo. 529; Hannibal v. Brown, 43 Mo. 294; Briant v. Jackson, 99 Mo. 585; 2 Jones on Mortg. (5 Ed.), sec. 1915.

J. C. WILSON, J. W. PEERY and D. P. STUBBS for respondent.

(1) The agreement between Slatten and defendant, that if defendant would pay the interest at any time before the sale, the sale would be postponed and the time of payment of the mortgage debt extended for one year, was a valid and binding agreement, and the payment of the amount would have postponed the sale, the same as if the whole amount of the mortgage debt had been paid. Swon v. Stevens, 143 Mo. 384. (2) The defendant is entitled to relief, on the ground of accident and surprise. Bostwick v. Stiles, 35 Conn. 195; Kopper v. Dyer, 59 Vt. 477; Holdsworth v. Shannon, 113 Mo. 522; 1 Story Eq. Jur., sec. 78; 2 Pom. Eq. Jur., secs. 823, 824 and 833; Adams v. Haskell, 10 Wis. 123. "By the term accident is here intended not merely inevitable casualty, or the act of Providence, or what is technically called *vis major*, or irresistible force; but such unforeseen events, misfortunes, losses, acts or omissions, as are not the result of any negligence or

misconduct in the party." 1 Story Eq. Jur. (12 Ed.), sec. 78; 2 Pom. Eq. Jur., sec. 823.    (3)    Under the circumstances of this case it was the duty of the trustee to have complied with the request of the defendant to adjourn the sale.    The trustee was thoroughly conversant with all the facts; he knew that Slatten had agreed to stop the sale if all the interest was paid; he knew that the Indiana executors had agreed to take up the first mortgage, or to pay up the interest and prevent the sale; he knew that defendant had relied upon this agreement up to a few days before the sale; he knew that the defendant had been exerting himself to the utmost to raise the money; that he was then in Chicago for that purpose; the character of the telegrams which he received was sufficient to advise him that there was some good reason why the money could not reach Bethany in time to prevent the sale.    He knew that under the terms of the deed of trust, as he construed them he was going to sell all these lands as one parcel, and in a manner which in the very nature of the case would prevent competition, and cause one-half of the lands to be sacrificed.    Judge v. Booze, 47 Mo. 544; Vail v. Jacobs, 62 Mo. 130; Meyer v. Ins. Co., 5 Mo. App. 245; Bales v. Perry, 51 Mo. 452.    (4)    The provision in the deed of trust that the trustee should sell the land in one parcel will not be sustained when a literal compliance with it results, as in this case, in great injury to the mortgagor. (a)    This provision is opposed to the whole policy of the law of this State in regard to forced sales of property under executions, or deeds of trust and mortgages with power of sale.    As to sales under executions, the statute expressly provides that the land shall be sold in subdivisions.    R. S. 1889, sec. 4929. Under this statute it has been uniformly held that if a sale of lands *en masse* results in injury to the debtor, it will be set aside on motion or by bill in equity.    Kelly v. Hurt, 61 Mo. 468; Bauldin v. Ewart, 63 Mo. 330.    The same rule has been uniformly applied by this court to sales under deeds of trust or mortgages.    It is the duty of the trustee to sell in parcels if

that method of sale will realize the largest amount of money. If land easily susceptible of division is sold in bulk, and it appears that a sale in parcels would have been more advantageous to the debtor, and that he has been injured by such sale in bulk, it has been the uniform practice of this court to set aside the sale and permit a redemption by the mortgagor. Taylor v. Elliott, 32 Mo. 175; Goode v. Comfort, 39 Mo. 313; Chesley v. Chesley, 49 Mo. 540; s. c., 54 Mo. 347; Tatum v. Holliday, 59 Mo. 422; Carter v. Abshire, 48 Mo. 300; Sumrall v. Chaffin, 48 Mo. 402; Baker v. Halligan, 75 Mo. 435; Montgomery v. Miller, 131 Mo. 595. (b) The provisions under consideration will not render the sale valid, if in fact the property of the debtor was needlessly sacrificed, and as shown by the evidence, twice as much land was sold as was necessary to pay the debt. Stoffel v. Schroeder, 62 Mo. 149; Cassaday v. Wallace, 102 Mo. 581; Harlan v. Nation, 126 Mo. 103. (c) Contracts of mortgage will be closely scanned by courts of equity and harsh or unconscionable provisions will be relieved against. Pom. Eq. Jur., secs. 162, 382, 378, 434, 1180 and 1193; Story Eq. Jur. (12 Ed.), secs. 239-331 and 1018c; Jones Mtgs. (4 Ed.), secs. 1044 and 1049; Lawson on Contracts, secs. 274 and 275; Dorrill v. Eaton, 35 Mich. 302; Leavans v. Bank, 50 Oh. St. 591; Dennis v. Moses, 18 Wash, 537; Daily v. Maitland, 88 Pa. St. 384; Wilson v. Ott, 137 Pa. St. 253; Johnson v. Williams, 4 Minn. 560; Guar. Trust Co. v. Green Cove Co., 139 U. S. 137. (d) The literal enforcement of this provision of the mortgage, without any reference to the character and quantity of the land conveyed, and without reference to whether it could be advantageously divided, or whether a part of it would pay the debt, would amount to a practical renunciation in advance of the equity of redemption of the mortgagor. That this can not be done is established by all the authorities. Peugh v. Davis, 96 U. S. 332; Pom. Eq. Jur., secs. 162, 378, 433 and 1180. (5) The plaintiff is not entitled to protection as an innocent purchaser

of this land.    (a)    The reply of plaintiff does not plead that he was an innocent purchaser, in good faith, without notice. Holdsworth v. Shannon, 113 Mo. 524; Conn. Mut. Ins. Co. v. Smith, 117 Mo. 293;  Garrett  v. Wagner, 125 Mo. 464.    (b) He holds the land as grantee under a  quitclaim  deed, and for that reason can not claim to be an innocent purchaser.  Stoffel v. Schroeder, 62 Mo. 150.    (c)    The plaintiff was present at the sale and knew the mode and manner thereof; he knew the situation, value and character of  the  land, and that it was being recklessly sacrificed at the sale.    He does not claim in his testimony that he had no knowledge of the facts.    Montgomery v. Miller, 131 Mo. 598.

MARSHALL,  J.—This is an action in ejectment  to recover thirteen hundred and twenty acres of  land in  Harrison county.

The petition is in the usual form.

The answer, after admitting that  the  defendant  was  in possession of the land, denied the other allegations of the petition, and, by way of  cross-bill, alleged that the  plaintiff claimed title through a trustee's sale, under a deed of trust executed by defendant and  his  wife  to  Joseph P. Slatten, and prayed that the sale be set aside, and defendant  be  permitted to redeem the land, for the  reasons  stated · in  the  answer and cross-bill.

The answer further alleged, in substance, that the deed of trust under which plaintiff claimed title was  executed  by defendant and his wife on December 2d, 1893, to George W. Wanamaker, trustee, to secure a note of $10,000 to Joseph P. Slatten; that at the time of the execution of said deed of trust, defendant also executed a second deed of trust on said lands to secure $15,800 to the estate of James W. Anderson, deceased; that it was understood by all  the  parties that  the  Anderson deed of trust was to  be  executed  as  a  second  lien  upon  the land;  that  thereafter, defendant paid to Slatten $800 on the

debt secured by the deed of trust here in question, being the amount of one year's interest thereon; that, thereafter, the trustee in said deed of trust advertised said lands for sale on the 30th day of September, 1896, and that the beneficiaries in said second deed of trust promised and agreed with defendant that they would redeem said lands from the first deed of trust and prevent the sale thereof, and that defendant relied upon this agreement with said beneficiaries in the second deed of trust, and fully believed that they would carry it out and prevent the sale; that, before the sale, said Joseph P. Slatten, beneficiary in said deed of trust under which plaintiff claims, agreed with defendant that if he would pay the interest then due, amounting to about $1,500, at any time before the sale, he would postpone the sale and extend the time of payment of the mortgage debt for one year; that, thereupon, defendant, fearing that the second mortgagees would not carry out their agreement to redeem the land, began to make arrangements for raising the money with which to pay the amount agreed on between him and Slatten; that, owing to the stringency of the money market and the financial depression prevailing, it was impossible for him to raise the amount required in Harrison county, and he applied to friends in Chicago, and made arrangements with them to furnish the money when required; that, on September 29th, 1896, being the day before the sale, he arrived in Chicago for the purpose of procuring the money which had been promised him; that, upon his arrival, he discovered to his surprise that the man from whom he was to get the money was absent from the city and would not return for two days; that he immediately sent a telegram to the trustee requesting him to postpone the sale for two days, and the amount agreed upon between defendant and Slatten would be paid; that the trustee received this telegram before the sale and showed it to Slatten, the beneficiary, and that said beneficiary and said trustee, notwithstanding the request of defendant, and the promise of Slatten, refused to postpone or con-

tinue the sale; that had the party having the money not been absent, as defendant had no reason to expect or believe, he would have procured the money and paid the amount agreed upon to postpone the sale, but meeting with said accident he was prevented from so doing, otherwise the amount would have reached the trustee and beneficiary in time to prevent said sale.

The answer further alleged that said lands are composed of numerous tracts, some of which are isolated from the others, and a long distance from each other; that upon said tracts were situated numerous separate and distinct buildings and other improvements, and upon one of said tracts was situated a steam mill; that said lands at the time of the advertisement thereof by said trustee, and at the time of the sale, were of the total value of about forty thousand dollars; that said trustee, in violation of his duty as a trustee for defendant, and in violation of defendant's rights, advertised and stated in the published notice of sale that all of said lands would be sold in one parcel as a whole tract, without dividing the same; that by reason of said statement of said trustee in his notice of sale, persons who would have purchased the several distinct parcels or tracts of said lands were prevented and deterred from attending said sale or bidding upon said lands; that on said 30th day of September, 1896, the said trustee in pursuance of said notice, exposed all of said land for sale in gross, and stated to the persons there present at said sale that said lands contained one thousand three hundred and twenty acres, and that they would only be sold as one tract; that said lands were stricken off and sold to Campbell Crossan for the sum of thirteen thousand dollars, being about $1,400 in excess of the mortgage debt, interest and costs and expenses of sale; that, thereupon, the trustee executed a deed to Crossan, and the latter at the same time executed to plaintiff a quitclaim deed for the lands for the expressed consideration of $100; that if the trustee, in his said notice of sale and at said sale, had offered said tracts or parcels

of land for sale separately or in parcels, as it was his legal and official duty to do, not more than one-half of said lands would have been required to be sold to pay said indebtedness; that said trustee, in selling said lands as one parcel, without dividing the same, claims to have acted by authority of a provision inserted in said deed of trust authorizing and directing him to do so; but defendant avers that said provision was harsh, inequitable and illegal, and that the same was inserted in said deed of trust by the said beneficiary therein, by unjustly and oppressively taking advantage of the situation and necessities of this defendant, for the purpose, and with the intent on the part of the said beneficiary, of wresting from this defendant his property, and of depriving him of his equity of redemption in so much of said property as was wholly unnecessary to be sold for the payment of said debt and interest; that by reason of the facts aforesaid, no title passed to plaintiff, by reason of the conveyance from the trustee to Crossan and from Crossan to plaintiff, and that the same were inoperative for any other purpose than as an equitable assignment to said plaintiff of the claims of said Slatten to said lands; that, by reason of the wrongful acts of said trustee, and of said beneficiary in said first named deed of trust, hereinbefore stated, said lands were sacrificed and sold for less than one-half of their real value, and that said trustee exceeded his power and authority by selling lands which were not necessary for the payment of said debt and which were greatly in excess of the amount necessary to be sold for the payment thereof, and that his pretended sale of all of the lands for that purpose was illegal and void.

Wherefore, defendant prays the court, by its judgment and decree, to cancel, annul and set aside said pretended sale and conveyance, from the trustee to Crossan, and from Crossan to plaintiff, and to take an accounting of the amount due the plaintiff, by reason of the equitable assignment aforesaid, and that defendant be permitted to redeem said lands from said sale; and the defendant here now offers to pay to said

plaintiff, or into court for him, the amount which the court shall upon a hearing ascertain and adjudge to be equitably due to him, upon any day which shall be by the court named in its decree; and that upon such payment to the plaintiff or into court for his use, this defendant may be reinvested with the full title to said lands, and for further relief, etc.

The reply of plaintiff admitted the allegations of the answer, as to the execution of the deed of trust, and as to the sale of the lands in gross, but denied that said lands were composed of numerous tracts, or that they were isolated, but alleged that they lie contiguously and practically in one body. The reply also alleged that the sale was regular, and that Crossan acted as the agent of plaintiff in purchasing said lands, and that plaintiff paid to Crossan $13,000 and took a deed from him to the lands.

Upon the hearing of the cause the court, sitting as a chancellor, found the issues for the defendant on his cross-bill, and rendered a decree permitting him to redeem by the payment to the plaintiff, or into court for his use, within thirty days, of the amount bid for the property at the sale, to wit, thirteen thousand dollars, with interest at eight per cent per annum from the date of the sale until the date of payment, and adjudged all of the costs against the defendant. The decree also provided that if the defendant failed to pay or tender the amount specified within thirty days, the plaintiff should have judgment for the possession of the lands and damages and rents and profits.

From this decree plaintiff has appealed to this court.

The trial developed the following state of facts: Prior to 2d of December, 1893, the title to the land in controversy was in James W. Anderson, subject to a deed of trust for $10,000 given by him to one Aiken. The property was advertised for sale under the deed of trust. The defendant wanted to buy it, as he claims, to "fortify his title" to it, though it does not appear what interest he had in the land at that time. He

had no money, and so he and his attorney applied to Joseph P. Slatten for the money necessary to buy the property at the trustee's sale, he being, it is alleged, the only one from whom such a large amount could be obtained at that time, owing to the stringency in the money market and the refusal of the banks and other institutions to lend money. There was considerable negotiation about the loan, Slatten hesitating about making it. Finally the arrangement was perfected, Slatten furnished defendant the money, and the property was put up and sold, in bulk, by the trustee, and defendant became the purchaser. Pursuant to agreement the defendant then, on December 2d, 1893, executed a deed of trust on the land to Slatten, to secure his note for $10,000, payable one year after date, bearing eight per cent interest, and defendant's attorney, George W. Wanamaker, was made trustee therein. The deed of trust contained, *inter alia*, this provision: "It is hereby expressly stipulated and agreed between the first and third parties hereto, that, in the event of a sale under the provisions of this deed of trust, for any purpose, that all of the above de-. scribed land shall be sold in one parcel as a whole tract together without dividing same into tracts or subdivisions." Thereafter defendant gave a second deed of trust on the same land, to secure a note for $15,800, to the Anderson estate. Between December 2d, 1893, and July, 1896 (to wit, February 15th, 1895), defendant paid Slatten, eight hundred dollars, the interest for the first year. In July, 1896, Slatten went to see defendant and told him he must pay up the interest or he would foreclose the deed of trust. Defendant failed to do so, and in the latter part of August, 1896, Slatten had the property advertised for sale on the 30th of September. On the 3d of September the executor of the Anderson estate, the holder of the second mortgage, came to Harrison county from Indiana, and defendant says said executor promised him to supply the money to pay the interest due on the Slatten note and stop the sale. The Anderson estate was insolvent but

defendant says the executor represented that the creditors of that estate were rich, and they would furnish the money needed to stop the sale under the Slatten deed of trust, so as to protect their interest through the Anderson estate, under the second deed of trust. Defendant claims that "this promise" (of the executor of the Anderson estate) "lulled the defendant into a sense of security, and he relied upon it up to within a few days of the sale." On Saturday preceding the sale defendant talked with Slatten and he agreed to stop the sale if the interest was paid, but Slatten said he did not believe the Anderson estate could raise the money to pay the interest. So finding he could not get the money from that quarter the defendant started on the Sunday night before the Wednesday on which the sale was advertised to take place, to go to Washington, Iowa. On the train, he says, he met a man named Kaufmann, of the firm of Kaufmann & Brown, dealers in live stock in Chicago, and told him the object of his journey, and arranged with Kaufmann to get fifteen or sixteen hundred dollars from him. Defendant got off the train on Sunday night at Washington, Iowa. On Monday night he took the train at Washington, Iowa, for Chicago, and arrived there on Tuesday morning, and went to the stock yards and ascertained that Kaufmann was not in the city and would not return for two days. On the morning of the 30th of September defendant sent a telegram to Wanamaker, the trustee, saying: "Hold off sale, Slatten demands. Cash express to Crossan to-day." On Wednesday the 30th of September, 1896 (the day of the sale), defendant telegraphed the trustee: "Have sale continued two days; may not get money sent to day." The trustee received the first telegram between nine and ten o'clock in the morning. He went to the telegraph operator at the depot to find out whether the telegram had been sent from Chicago that day or the night before, but could get no definite information about it. The express from Chicago would reach Bethany, the county seat of Harrison

county where the sale was to take place, about two o'clock, so the trustee prevailed upon the telegraph operator to telegraph and ascertain if there was any money on the train sent to Crossan as indicated by the telegram from defendant, and obtained information that there was not.    Upon receipt of the second telegram the trustee went to Slatten and urged him to postpone the sale, but upon his refusal to do so, the trustee after one o'clock p. m. executed the trust and sold the property.    There were two bidders, Slatten and Crossan. Slatten told the trustee he did not want the property and would not have it if he could get his money.    Slatten ran up the price to $12,000, which was the amount of his debt, interest and the costs.    Crossan bid $13,000, and the property was sold to him at that sum.    Crossan wanted the deed made to William Dunn, but the trustee refused to do so.    The trustee made the deed to Crossan and received the money from him.    Crossan immediately conveyed the property, by quitclaim deed, to the plaintiff, Dunn, for whom he says he was acting all the time. Defendant refused to surrender the possession, and this suit was brought.

The circuit court entered a decree giving the defendant the right to redeem in a specified time; and upon his failure so to do, ordered that plaintiff have possession, with damages, rents and profits as before set out.

## I.

Defendant claims that the decree permitting redemption is right, and specifies three grounds for equitable relief:

"1st.    That the failure of the defendant to find Kaufmann at Chicago, as he had every reason to suppose he would, and the unexpected absence of the latter from the city, which prevented the defendant from getting the money with which to redeem and prevent the sale, was an accident, without fault or negligence on the part of the defendant, such as entitles a court of equity to grant him relief.

"2d. That the refusal of the trustee to postpone the sale, when he knew from the nature of the case, the character of the property and the manner in which he proposed to sell it, that it must necessarily be sacrificed, was such an abuse of the discretion vested in the trustee as calls for the interference of a court of equity. That it was the duty of the trustee to consult the interests of the debtor, and that he was not bound at all hazards to obey the behests of the creditor.

"3d. That the clause inserted in the deed of trust, that the lands if sold under it, should 'be sold in one parcel as a whole tract together, without dividing same into tracts or subdivisions,' is, under the circumstances of this case, such a stipulation as a court of equity will relieve against, when a literal compliance with it results, as in this case, in the confiscation of the property of the mortgagor. That it is unconscionable, opposed to the very nature and purpose of the contract of mortgage, and to the policy of the law of this State, as declared both by statute and the decisions of this court. That it is in the nature of a forfeiture, against which a court of equity will relieve. That it practically amounts to the renunciation in advance of the equity of redemption of the mortgagor in all the lands which were not necessary to be sold to pay the debt. That to control and relieve against such unconscionable provisions or forfeitures in a mortgage, is one of the most ancient and well established prerogatives of a court of equity."

Under the issues and evidence the plaintiff was entitled to recover, unless the equitable defense interposed by the defendant was sustained. The court properly treated the case as one converted by the answer into an equitable proceeding. [Swon v. Stevens, 143 Mo. 384.]

## II.

The first ground relied on by defendant is "accident and surprise" without any fault or negligence on his part. This

consists of his failure to get the money from Kauffman, in Chicago, to pay the interest and secure a postponement of the sale. The testimony of defendant upon this branch. of the case reads, to say the least of it, like a fairy tale, "born of a fertile imagination and without any solid foundation of fact to rest upon." Summarized it is this: He was nearly twenty months in arrears of interest on a debt of $10,000, which was past due the same length of time. In July his creditor demanded that the interest be paid or he would foreclose the deed of trust. He did nothing. The property was advertised for sale about the last of August, the sale to take place on the 30th of September. The executor of the estate holding a second mortgage for $15,800, appeared a few days after the advertisement and promised to furnish the money to pay the interest (some $1,500 or $1,600) and stop the sale. He knew the estate was insolvent, but believed the creditors of the estate would supply the money to protect their second mortgage. So this promise lulled him into a sense of security until the Saturday before the Wednesday when the sale was to take place, and on that day he asked his creditor to postpone the sale if he would pay up the interest, and the creditor agreed to do so, but told him he did not believe the estate could raise the money. Thus after the expiration of at least thirty days—the time intervening between the creditor's demand in July and the first insertion of the advertisement of sale about the last of August—during which defendant did absolutely nothing towards preparing to pay the interest or principal or protecting his property, and after waiting for over three weeks in September, "leaning upon the broken reed" of the promise of the executor of the insolvent estate to protect themselves and him, on Sunday preceding the fatal and fast approaching Wednesday, he boarded a train at Bethany, Mo., "aiming to go to Washington, Iowa," but without any definite hope or prospect of getting aid. On the train he met a stock man, named Kauffman, from Chicago, who promised to let him have

the money.   Instead of going with this man to Chicago and getting the money immediately, he stopped on Sunday night at Washington, Iowa, for a purpose not disclosed, stayed there all day Monday, and on that night started for Chicago where he arrived on Tuesday morning.   He went to the stock yards to see his friend, Kauffman, and found that he was absent from the city and would not return for two days.   It does not appear what he did all day Tuesday, but early on Wednesday morning he sent a telegram to the trustee, "Hold off sale Slatten demands.   Cash express to Crossan to-day," thereby endeavoring to create the impression that the cash was on its way by express to Crossan, the cashier of the bank at Bethany, or, as he says he meant, that he would send the cash that day—not that it had been sent—although he knew he did not have any cash to send and that his friend was away from Chicago and would not return for two days, and that the cash was not expressed that day and would not and could not be. Later during the same day, Wednesday, he sent another telegram to the trustee saying:   "Have sale continued two days. May not get money sent to-day," when he knew he could not get the money that day.

This is the "accident and surprise" relied upon to have the sale set aside, and these are the acts and doings of the defendant which are pointed to as showing that he was without fault or negligence.   It strikes the average mind that it would have been an "accident" rising to the grade of a mystery, if he had gotten fifteen hundred dollars from Kauffman or any-one else under the circumstances.   He had no security to offer. His farm was doubly mortgaged—for an amount twice and a half as much as he had paid for it less than three years before —even the personal property, machinery, etc., on the farm was mortgaged.   Kauffman would have proved himself a real Mulberry Sellers if he had parted with fifteen hundred dollars on such an investment.   In short, the whole claim is lacking in tangibility and does violence to ordinary credulity.

This case does not come within the principle decided in Holdsworth v. Shannon, 113 Mo. 508, where the sale was held at an unusual hour, and the debtor had sent an agent, armed with the cash, to attend the sale, who arrived at the place of sale in abundant time, if the sale had not taken place earlier in the day than was the custom of the locality for holding sales, and where the property was sold for much less than its value because there were no other bidders present owing to the unusual hour of the sale. Nor does it fall within the rule laid down in Stoffel v. Schroeder, 62 Mo. 147, for there the sale was also at an unusual hour. Nor yet is it controlled by Vail v. Jacobs, 62 Mo. 130, for one of the grounds for granting the relief in that case was the fact that the trustee was not present at the sale. Nor does it class itself with Williamson v. Dale, 3 Johns. ch. 290, where the plaintiff was innocently mislead as to the day of sale; or with Seaman v. Riggins, 1 Green, ch. 214, where a second incumbrancer accidently missed his way in going to the sale and hence arrived too late; nor with Wetzler v. Schaumann, 24 N. J. Eq. 60; Collier v. Whipple, 13 Wend. 224, or Griffith v. Hadley, 10 Bosw. 587, where the parties innocently mistook the day of sale and were prepared with the money to bid with; nor with Hoppock v. Conklin, 4 Sandf., ch. 582, where the party was detained as a juror and the court refused to excuse him. Neither is the case within the principle of Bostwick v. Stiles, 35 Conn. 195, which was a bill to redeem, and it appeared that the decree of foreclosure gave until August 5th to redeem, that the uncle of the mortgagor had promised to furnish the money to redeem but failed, and that on the 5th of August, within the time allowed for redemption, the mortgagor and a person who had the amount necessary to redeem in United States bonds, went to the house of the mortgagee and finding he had gone to bed, sent word by his wife that they had come to redeem and were answered that the mortgagee was sick, so he could not be seen. Nor does it come within the ruling in Kopper v. Dyer,

59 Vt. 477, where the decree of foreclosure gave the mortgagor until June 1st, 1885, in which to make the last payment for redemption, and all the previous payments having been made, the mortgagor tendered the last instalment to the mortgagee on the 1st of June, 1885, the last day named in the decree, and the mortgagee refused to receive it.

In fact, no case has been called to our attention where the sale under a deed of trust has been set aside where the "accident or surprise" consisted simply of a failure to raise the money necessary to redeem within the time limited, especially is this true where the mortgagor had abundant time to make his arrangement and took no steps whatever in his interest for the sixty days when the danger of losing his property was imminent, and then three days before the last day of grace went upon such a fishing expedition as this defendant did and now asks to have his case declared an accident or surprise, without fault or negligence on his part. The claim is wholly without merit.

## III.

The refusal of the trustee to adjourn the sale is the second point urged by defendant.

It will be borne in mind that the defendant was warned in July that if he did not pay the past due interest, the deed of trust would be foreclosed, and that he did absolutely nothing before the advertisement was inserted in the papers about the last of August, and even after that he did nothing but rely upon the unreliable promise of the executor of an insolvent estate to furnish the money to pay the interest, and that it was not until the Saturday before the sale, when Slatten told him the interest must be paid or the sale would proceed, that he attempted to do anything, and further that on the day of the sale, he sent a misleading telegram from Chicago, manifestly intended to convey the impression that the money was on its way by express, when he knew such was not a fact, and finally,

when the trustee held off the sale until the last minute, he telegraphed to have the sale postponed for two days, saying, "may not get money sent to-day," although he knew it would not be sent that day. It nowhere appears that he would have secured the money, if the sale had been postponed two days. The only evidence on this subject is defendant's testimony, "If he" (Kaufman) "had been there I would surely have got the money and forwarded it." There is a total absence of any showing sufficient to satisfy any mind, that Kaufmann was able to supply the money—he was not even called as a witness in the case, and his financial standing was not proved by any one else. The utmost that can be said of this claim therefore is that the debtor asked for an extension of time for two days, which he had no right to demand, and when in all human probability it would do him no good. It is not pretended that the property would have brought a better price if the sale had been postponed two days. This contention must therefore be resolved against the defendant.

## IV.

The last position taken by the defendant is that the sale should be set aside because the property was sold in bulk instead of being divided into parcels, and in consequence it brought less than it would otherwise, and that the provision of the deed of trust requiring it to be sold in bulk was an advantage taken of defendant when in dire financial need, and hence it would be inequitable to enforce it.

The deed of trust required the trustee to sell in bulk. This was the contract of the parties. They were *sui juris* and they made it. Courts can not make contracts for persons who are of legal age and not in ward. Defendant needed the $10,000 to enable him to buy this property when it was sold under the Aiken deed of trust. But Slatten was under no legal duty to lend defendant the money. The fact that defendant could not get the money anywhere else, does not

change the contract or authorize a court to read out of it the agreements of the parties, so long as they are inside the lines within which the law permits a contract to be made. There is nothing in this record which is beyond the power of the parties to contract about. This clause was binding on the trustee. Neither the trustee nor a court could disregard it because the times were hard or the defendant's misfortune forced him to agree to it. [Lipscomb v. Ins. Co., 138 Mo. 17.]

Courts of equity will set aside a sale under a deed of trust where the trustee has been guilty of fraud, partiality or misconduct, or where the debtor, who is ready and able to redeem, is prevented from doing so by some occurrence, over which he had no control and in which his fault or negligence did not concur, which prevented his reaching his creditor or the place of sale before the time fixed by the contract or the law for redemption expired, or where some fraud has been perpetrated on the debtor or some undue advantage has been taken of him by the creditor. [Hardwicke v. Hamilton, 121 Mo. 465; Harlin v. Nation, 126 Mo. 97; Orr v. McKee, 134 Mo. 78.] Relief will also be granted where it clearly appears that the trustee has not kept within the authority conferred upon him and has not sold the property to the best advantage. But the mere fact that he has sold the property in bulk will not of itself be sufficient to set aside the sale. [Benkendorf v. Vincenz, 52 Mo. 441; Chesley v. Chesley, 54 Mo. 347; Million v. McRee, 9 Mo. App. 344.]

The defendant relies *inter alia* upon the following cases: Taylor's Heirs v. Elliott, 32 Mo. 175, where it was held that there is no rule requiring a trustee to subdivide, and that in that case he should not have sold in lump, but in consequence of Taylor's acts inducing Newberry to purchase the property in bulk, the sale would not be set aside; Goode v. Comfort, 39 Mo. 313, where the property was sold in bulk and it appeared it would have sold for a better price if divided into lots, and

the mortgagor was allowed to redeem, but the *cestui que trust* was the purchaser, and the rights of third persons had not intervened; Carter v. Abshire, 48 Mo. 300, where the property was sold in bulk, and the sale upheld, WAGNER, J., saying, "As there was no direction or provision in the deed directing absolutely that the land should be sold by subdivisions, I am of the opinion that the power was well executed, and that the trustee did the best he could under the circumstances;" Sumrall v. Chaffin, 48 Mo. 402, where several tenement houses were sold in bulk and the sale upheld, but WAGNER, J., said, it would have been the duty of the trustee to sell separately, if anybody at the sale wanted to buy a part; Chesley v. Chesley, 54 Mo. 347, where a sale *en masse* was set aside, but the court said: "Had this sale been attacked solely upon the ground that it was a sale in gross, it should not have been set aside." This was the ruling in Benendorf v. Vincenz, 52 Mo. 441; Tatum v. Holliday, Admr., 59 Mo. 422, where a sale in bulk was set aside; Baker v. Halligan, 75 Mo. 435, where it was held that when enough property has been sold by a trustee to satisfy the debt his power to sell ceases; and Montgomery v. Miller, 131 Mo. 595, where it appeared that the sale was in bulk, at 11 o'clock a. m., when the usual hour for such sales was between 1 and 2 p. m., and the court said: "While no one of these facts would of itself afford ground for setting aside the sale, yet when all of them are found concurring as they do in this sale, otherwise not void of suspicion, the sale should be set aside, and the plaintiff be permitted to redeem." But in none of these cases did it appear that the parties had expressly stipulated in the deed of trust that the property should be sold in bulk, as is the case here, as is clearly shown by the language of WAGNER, J., in Carter v. Abshire, 48 Mo. 300, such a sale would have been sustained if the contract had so expressly provided. Defendant refers to cases outside of Missouri where the deed of trust contained such a provision, and where in a foreclosure proceeding in a court of equity, the

court did not observe it but prescribed other terms and provisions for the sale. But those cases are not decisive of this, for there the aid of the court was sought, and in such cases the court renders its aid only in its own way, while here the aid of court was not asked, but the procedure agreed upon by the parties was followed; and in those cases the contest was between the mortgagor and mortgagee, while here it is between the mortgagor and third persons. There is no question here of the mortgagee being only allowed to receive his debt—for here the mortgagee was not the purchaser, has received his money, and will not be affected in any way no matter what becomes of this case. The plaintiff purchased the land at an open sale, conducted with the utmost fairness by the trustee, in strict conformity with the contract of the parties and the requirements of the law, and the only question is, shall his bargain be taken away from him (if it is a bargain—as to which the testimony is conflicting), when he has kept strictly within legal limits, and was not a party to anything that happened between the mortgagor and mortgagee, or shall the sale be set aside and defendant be allowed to redeem under the circumstances disclosed herein. The conclusion seems like a mathematical deduction, that there is no equity in the answer or claim, and that the only merit on that side of the case is the exceedingly ingenious and forcible brief of his counsel that is so strong as almost "to make the worse seem the better cause."

The decree of the circuit court permitting the defendant to redeem the land is erroneous, and is reversed and the cause remanded to the circuit court with directions to enter judgment for plaintiff for possession of the premises described in the petition, and for damages computed at the rate of $125 a month from the date of the institution of this action to the date of the entry of such judgment, and to fix the value of the rents and profits at $125 a month from the date of such judgment until possession be delivered to plaintiff, and for his costs. It is so ordered. All concur.